° CARTWRIGHT-CAPS CO. *v.* FISCHEL & KAUFMAN.

[74 South. 278, Division B.]

1. LIBEL AND SLANDER. *Publication. Sufficiency.*

The dictation of a letter to a stenographer employed by a person or corporation in the business, is not a sufficient publication to support an action for libel, in the absence of any repetition by the person or stenographer to other persons.

2. LIBEL AND SLANDER. *Privilege. Business letter.*

A letter written by a defendant corporation to plaintiff about a business transaction, sent under seal and for plaintiff's inspection alone, was privileged and could not be the subject of a suit for libel.

APPEAL from the chancery court of Warren county.
HON. E. N. THOMAS, Chancellor.

Suit by Fischel & Kaufman against the Cartwright-Caps Company. From a decree overruling its demurrer, defendants were granted an appeal.

The facts are fully stated in the opinion of the court.

*Hirsh, Dent & Landau,* for appellant.

*Brunini, Hirsh & Griffith,* for appellees.

ETHRIDGE, J., delivered the opinion of the court.

Fischel & Kaufman, a partnership composed of Jewish citizens doing business in Vicksburg, brings this suit in the chancery court for an alleged libel contained in certain correspondence written by the appellant to the appellees. It seems that the appellees are engaged in the laundry business and purchased certain machinery from the appellants known as a "water softening outfit," and the correspondence grew out of the transactions regarding the purchase and use of this machinery. It is alleged that on or about the 4th of November the appellant mailed to

the appellees a letter which, omitting the immaterial parts, reads as follows:

"We cannot help but feel that you are exercising the prerogative of a cheap Jew, and in order to get these notes paid and forget them we are sending draft amounting to four hundred six dollars and forty-two cents for notes, less W. H. Bruser invoice of forty-three dollars and fifty-eight, as per your letter of October 19th. Please honor same.

"Yours very truly, CARTWRIGHT-CAPS Co.

"Per CHAPLIN A. CARTWRIGHT, President.

"P. S.—The above draft will be presented on November 13th, the day the last note is due."

There was another letter, alleged to have preceded this letter, and marked "Exhibit A" to and made a part of the bill, as follows:

"Chicago, Oct. 23, 1914.

"Messrs. Fischel & Kaufman, Prop. Pearl Laundry, Vicksburg, Miss.—Gentlemen: We are at a loss to understand your attitude regarding the payment of your notes, and also that part of your letter which reads as follows: 'That after plant was installed, gave us no satisfaction'— especially after receiving your letter in which you state how delighted you were, and in addition having been personally told of the satisfactory results you were obtaining. Further, we do not see why, if you want to be square, you should ask us to send these notes for collection. Your contract called for this money in Chicago funds. From this letter you evidently want to ignore our bill for the castings and room and board of our man while making the change in your filter. It seems that no dependence whatever can be put in you. We have your several promises of paying, yet you do not honor our drafts when sent to the bank. We feel that you are very unjust and unkind in trying to hold us up for this tank, for, as we have stated several times, we do not feel that our equipment was at fault, and the suggestions that have been made were made

to you with a view of giving you something which would in a way protect you against your own carelessness, if you did neglect it or fail to take care of it. The original filter which was put in the tank—had the water been kept away from the foundations—would have given you perfect filteration, but in the condition in which the writer found your tank, and the water still running around the foundations, the chances are there wasn't a tight joint in the whole filter box. Yet in one of your letters you state that at the expense of a very few dollars you could have repaired that, but instead of acting on your own initiative you were writing letters of complaint in here and holding up payment of your notes. Please tell us what is to be done with such people. As your Mr. Kaufman stated to the writer, and also wrote to this office, how easily and how cheaply the repairs could have been made, we are at a loss to understand why you permitted our Mr. Aagaard to make any change whatever. The Cartwright-Caps Company stand back of every machine they put out, but we cannot anticipate nor forstall carelessness and neglect. As stated in our previous letters, we do not feel obligated for expense you were put to for installing the auxiliary tank, and feel you are using your nerve in presuming to hold us up for this money. Until you pay your notes, some of which are long past due, and advise us of your intentions regarding the bill for castings and Mr. Aagaard's expense, we cannot enter into any discussion in regards to allowances.

Yours very truly,

"CARTWRIGHT-CAPS Co.

"Per CHAPLIN A. CARTWRIGHT, President."

The publication alleged of this letter is that it was published among the clerical force of the office of the appellant. The bill does not set out by averment the particular meanings of the portions of the letter relied on, but relies on the statements as being libelous *per se,* without *inuendo* or allegation as to what the letter was understood to mean by the parties by whom and to whom they were written.

This bill was demurred to by the defendants—first, on the ground that the bill of complaint does not set forth facts sufficient at law to constitute a cause of action; second, that it does not set forth facts sufficient to grant relief; third, that the letters are not, nor is any part thereof, libelous and defamatory. This demurrer was overruled by the chancellor, and an appeal granted under the statute to settle the principles of the case.

The contentions made by the appellees are that the letters are libelous *per se,* and that they are not privileged, and that the dictation of the letters to the stenographer of the complainant was a sufficient publication. The case was filed in the chancery court because, under a statute of this state, there is a proceeding in chancery authorizing attachments against nonresidents both on contract and in tort.

In our view of the case it is not necessary to decide the question as to whether the statements in the letters alleged to have been written were libelous *per se* or not. Under the facts of this case we think that the letters were privileged, and that there was not, in a legal sense, a publication of the letters in question. The appellant in this case is a corporation, and, of course, can act only through agents, and the acts of both the president and the stenographer to whom the letter was dictated are the acts of the corporation. In our opinion, under the present conditions, the dictation of a letter to a stenographer, when employed by the person or corporation as a stenographer in the business, is not a sufficient publication, in the absence of any repetition by the person or stenographer to other persons.

In the second place, we think the letter in this case was privileged, because it was written by the corporation to the appellees concerning a business transaction existing between them, and while in tone the letters may not come up to the standards of business courtesy and propriety, we do not think, where they are sent to the party to whom.

written, sealed and for his inspection alone, that they constitute actionable libel. It was held by the Arkansas court in the case of *A. Bohlinger* v. *Germania Life Insurance Co.,* 100 Ark. 477, 140 S. W. 257, 36 L. R. A. (N. S.) 449, Ann. Cas. 1913C, 613, that a report by one employed to ascertain the character of another as an insurance risk, and his fitness for the position of agent, which states that he had lost a position through carelessness, and had paid too much attention to women and drank some, is made in good faith, and is seen only by those having an interest in the matter and confidential stenographers, is privileged, even when sent by the company requesting it, to the examiners and agents who had recommended the risk and employment, to check the correctness of their recommendation. The report of this case in L. R. A. supra, with the case note appended thereto, is filed with authorities covering the learning on this subject, and we do not deem it necessary to go into the authorities elaborately on this question, even though it is a new one in this state.

It is inconceivable how the business of the country, under the present conditions, can be carried on, if a business man or corporation must be subject to litigation for every letter containing some statement too strong, where it is only sent to the person to whom directed, and only heard by a stenographer to whom the letter is dictated. If the stenographer should, in violation of his or her duties, disclose such statement, there might be a liability because of the negligence of the person in employing an improper person as stenographer. However, it is unnecessary to decide this question, because the declaration here does not disclose such a state of case. Our court, in the case of *Hines* v. *Shumaker,* 97 Miss. 669, 52 So. 705, had this question presented, but decided the case on other grounds, pretermitting a decision upon this ground, probably because there was a conflict of authorities upon the proposition. We think that line of authorities which

hold in accordance with this opinion is more in harmony with sound jurisprudence. The case is therefore reversed and remanded.

*Reversed and remanded.*