# Wytheville.

THALHIMER BROTHERS, INC. v. KATHERINE T. SHAW.

June 18, 1931.

Present, Prentis, C. J., and Campbell, Epes, Hudgins and Browning, JJ.

The opinion states the case.

*George E. Haw,* for the plaintiff in error.

*Scott, Lloyd & Scott,* for the defendant in error.

HUDGINS, J., delivered the opinion of the court.

This is an action for defamation. The notice of motion contains two counts, one for slander at common law and the other for insulting words, under the Virginia statute. There was a verdict and judgment in favor of the plaintiff on both counts.

The defendant contends there was not sufficient publication of the defamation on which to base a verdict on the common-law count. The record discloses the following evidence on this point:

The plaintiff was employed as a saleswoman by the defendant, who operated a large department store in the city of Richmond. One of the regulations enforced by the defendant and known to the plaintiff was that on leaving the store at the close of the day's work all employees should account for any article of merchandise which might be in their possession and show to another employee, stationed at the door, any package which they had. The plaintiff's account of what took place as she was leaving the store on November 22, 1927, is that as she approached the door Mr. Hall, a floor manager, asked her: "Mrs. Shaw, didn't I see you as you left the booth tonight put a scarf in your pocketbook?" To which she replied: "You certainly did not." She claims to have then given her pocketbook to Hall, who, in her presence alone, opened it and found therein

a pair of bloomers, whereupon he said: "Mrs. Shaw, this is an awful thing I have caught you doing—stealing."

After some further conversation, they proceeded to the office of Mr. May, the treasurer and general manager of the defendant corporation, where it is claimed Hall repeated the insulting words to Mr. May, in the presence of the plaintiff. There is no positive testimony that anyone was present except the three parties named. There is evidence from which it fairly may be inferred that at least two other employees knew of the charge against the plaintiff before she left the office. One was Miss Anne Gregory, secretary to Mr. May, who was in his office when the plaintiff and Hall entered. Miss Gregory stated that she left immediately, but later was recalled and Mr. May, with the consent of the plaintiff, dictated to her a statement to be signed by the plaintiff; that she then left the office, typed the statement, and returned with it.

The plaintiff testified that before she signed the paper she asked Mr. May not to make her sign anything to the effect that she stole the bloomers, because she did not. That he shoved the statement at her and said: "Sign it. You know you stole them. Who stole them if you didn't steal them? They were in your pocket book. Who put them there?" She signed the statement because the bloomers were found in her bag. The names of Mr. Hall and Miss Anne Gregory were attached to the paper as witnesses.

Sometime during the plaintiff's stay in the office she became sick, and Miss Crowder, another employee, was called in to attend her. While they were alone in the room Miss Crowder asked the plaintiff: "Mrs. Shaw, have you had any financial troubles or anything to cause you to have done this?" When they came out of the room Mr. May asked Miss Crowder: "Did she confess?"

While the above evidence is in conflict with that for the defendant, the point to be determined is, was it sufficient to submit the question of publication to the jury.

 The modern authorities hold that a communication containing defamatory matter made to a business associate or servant in the ordinary and natural course of business is not actionable. In a note appended to the case of *Globe Furniture Co.* v. *Wright,* 18 A. L. R. 772, many English and American authorities, for and against the rule, are collected. Some of the cases hold that the occasion being qualifiedly privileged, whether or not the communication comes within the privilege, depends upon the existence or non-existence of malice. Other cases hold that such communication to a party charged with a duty or interest therein is not publication.

In the case of *Edmondson* v. *Birch & Co.* (1907), 1 K. B. (Eng.) 371, 1 B. R. C. 444, 7 Ann. Cas. 192, it was held that where a business communication containing defamatory statements was dictated to a stenographer, transcribed, and copied in a copy letter book by another clerk on a privileged occasion, the privileged occasion covered such publication so that the statements were not actionable. One of the English judges said:

"In my opinion, the law on the subject, as laid down in the cases, amounts to this: If a business communication is privileged, as being made on a privileged occasion, the privilege covers all incidents of the transmission and treatment of that communication which are in accordance with the reasonable and usual course of business."

 It was held in the following cases that a letter containing libelous matter dictated in the usual course of business by an officer of a corporation to a stenographer employed by the corporation, who transcribed and mailed it to the person affected, does not constitute such publication as will support an action for libel. *Morgan* v. *Wallis,* 33 Times L. R. (Eng.) 495; *Harper* v. *Hamilton Retail Grocers' Ass'n,* 37 Can. L. J. 31; *Owen* v. *J. S. Oglivie Pub. Co.,* 32 App. Div. 465, 53 N. Y. Sup. 1033, 6 N. Y. Ann. Cas. 76; *Central of Georgia Ry. Co.* v. *Jones,* 18 Ga. App. 414, 89 S. E. 429; *Cartwright-Caps Co.* v.

*Fischel & Kaufman,* 113 Miss. 359, 74 So. 278, L. R. A. 1918-F, 566, Ann. Cas. 1917-E, 985; *Chalkley* v. *Atlantic C. L. Ry. Co.,* 150 Va. 301, 143 S. E. 631.

In *Taylor* v. *McDaniels,* 139 Okl. 262, 281 Pac. 967, 66 A. L. R. 1246, it is held that a letter containing libelous matter, written at the solicitation of the plaintiff, delivered to the agent, and by the agent showed to other people, is not such a publication as will sustain an action for libel.

In *Ecuyer* v. *New York Life Ins. Co.,* 101 Wash. 247, 172 Pac. 359, L. R. A. 1918-E, 536, the plaintiff, a clerk in one of the defendant's branch offices, charged with the duty of collecting premiums and accounting therefor to the company, was by the traveling auditor found to be short in two of his accounts; the cashier and the auditor called the plaintiff's attention to the shortage and demanded payment. The plaintiff acknowledged that the receipts for the money were signed by him, but said he did not remember signing them and did not know what became of the money, and that the other employees had access to the cash box. The plaintiff refused to pay the money, and the cashier, with his consent, called the plaintiff's father in to the conference. During this conference between the cashier and the auditor, representing the company, and the plaintiff and his father, the plaintiff was charged repeatedly with having stolen the company's money—not only these particular sums but other money belonging to the company. The plaintiff still refused to pay. The next day the father, without his consent, went back to see the company and made the shortage good. Shortly thereafter an action for slander was instituted. The court held that it was a privileged occasion, and the presence of the father, with the consent of the plaintiff, did not destroy the privilege, but that it was for the jury to say whether or not the privilege had been abused. The question of publication was not discussed in the opinion.

Publication was briefly discussed in the case of *Switzer* v. *Amer. Ry. Express Co.,* 119 S. C. 237, 112 S. E. 110, 26 A. L.

R. 819. The facts were that a special agent and a routing agent of the defendant went to the express office at Estill for the purpose of investigating a robbery. These two agents, together with a local employee of the defendant, had an interview with the plaintiff, a former employee. The local employee was asked to retire from the conference, and went into an adjoining room. There was some evidence that the door to this room was left open. Then one of the two agents, in the presence of the other, used the slanderous language on which the action was based. It also appeared that the local police had informed these two agents of the whereabouts of the plaintiff at the time of the robbery, thereby showing that he could not have been guilty of the crime. The court held that there was publication by the defendant corporation.

In *Chalkley* v. *A. C. L. Ry. Co.*, 150 Va. 301, 143 S. E. 631, 640, the facts were that the superintendent of the railway company received a report that its telegraph operator had been drinking and was guilty of disorderly conduct on a passenger train. The superintendent caused an investigation to be made and received numerous reports from different employees and others substantiating the charge. There were other reports partially denying the same.

The superintendent dismissed the telegraph operator by a letter stating the cause of dismissal. This letter was dictated to a stenographer, who was regularly employed by the railway company, transcribed by her and sent to the chief dispatcher, who copied the letter and sent it in the usual way to the telegraph operator.

Chief Justice Prentis, in a well-considered opinion, in which he reviewed many of the leading authorities from England and America, approved the action of the lower court in sustaining a demurrer to the evidence on the ground (1) that the occasion was privileged and that the plaintiff failed to show any malice or abuse of privilege; (2) that there was no publication because both the dispatcher and the stenographer had a duty to

discharge in the ordinary course of their employment in typing and transmitting the letter.

In closing his discussion on the question of publication where a communication is made from a master to a servant, the Chief Justice said:

"It is not intended to say that such a rule could be invoked for the protection of those who use it as a mere subterfuge where the libelous matter is in fact communicated to one who has no duty to perform in connection therewith, or is otherwise actually disseminated."

Publication sufficient to sustain common-law defamation is uttering the slanderous words to some third person so as to be heard and understood by such person. Here, if the plaintiff's account of the interview is true, the words were published in such a manner that at least three of her co-employees knew of the charge made against her. They were not only repeated by Hall to May, but May reiterated substantially the same defamation. The defendant had a right, and it was its duty, to make an investigation of the facts and circumstances connected with the finding of the merchandise in the bag, but in doing so it had no right to repeatedly charge the plaintiff with theft in such a manner that the accusation would be disseminated to other employees who at the time were charged with no special duty in regard thereto. Under the circumstances, there was sufficient evidence of publication to submit the question to the jury.

The plaintiff testified to a number of instances wherein Hall had made remarks about her person and improper advances to her during the few months that she had been employed by the defendant; that for some of these advances she had threatened to report him to the management, to which he had replied that if she did she would lose her position.

The plaintiff further testified that she was so annoyed by the conduct of Hall that she sought the advice of the police, but made no complaint thereof to the defendant. The de-

fendant objected to this evidence on the ground that it was irrelevant, to which objection the court replied in effect that the court could not differentiate the relevant from the irrelevant testimony as it went along, but after all the evidence was introduced he could pick out and decide what was admissible. To which remark of the court counsel replied: "I reckon, your honor, that is better so. I won't object any further along that line. I will just save the point and except to your procedure."

Counsel then proceeded to cross-examine the witness at length on the alleged improper conduct of Hall towards her, and when the plaintiff had completed the introduction of her evidence in chief, moved to strike the evidence. The court at that time overruled the motion, but later, when all the evidence for both parties had been introduced, sustained the motion as to all acts and statements of Hall to the plaintiff which occurred prior to the twenty-second day of November, 1927. The defendant now complains of the action of the trial court in permitting this evidence to remain with the jury until all the evidence had been introduced. Under the circumstances, this action of the court does not constitute reversible error. See *Washington & Old Dom. Ry. Co.* v. *Ward's Adm'r,* 119 Va. 339, 89 S. E. 140; *Bourne* v. *Richardson,* 133 Va. 441, 113 S. E. 893; *Rinehart & Dennis Co.* v. *Brown,* 137 Va. 670, 120 S. E. 269; *Spencer* v. *Commonwealth,* 143 Va. 533, 129 S. E. 351.

The defendant objected to the testimony of A. S. Wright, captain of detectives, who, in answer to the question: "What was her physical condition?" gave the following answer:

"I was called down to the chief's office sometime after this and she was there; I didn't recognize her at the time. Her arms were very badly bruised—had her clothes down to show her arms; very badly bruised on one arm particularly; looked like finger prints very deep, and she seemed to be very excited and wanted me to see what had happened to her, and told her story. I told her I could serve her, but couldn't advise her;

that if she got out a warrant for them I would see they were arrested. She wanted advice rather than a criminal warrant or civil warrant. I said if she wanted advice she needed a lawyer, and she asked me who to get and I called you gentlemen. I introduced you to her and haven't seen you since then until you saw me about a week ago."

"Mr. Haw: Same objection.

"The Court: Same ruling.

"Mr. Haw: Exception."

■ So much of the above answer as was responsive to the question was relevant, but the other part was not. Counsel did not see fit to point out to the court the objectionable part of the answer, so the objection was properly overruled.

■ The defendant offered to introduce evidence tending to show how the bloomers got into the plaintiff's bag and Mrs. Shaw's connection with them. No plea of justification was filed. The trial court declined to permit the introduction of this evidence, relying upon the authority of *Williams Printing Co.* v. *Saunders,* 113 Va. 156, 73 S. E. 472, Ann. Cas. 1918-E, 693, and stating that the evidence offered tended to prove the truth of the charge. It was claimed in the petition for the writ that this evidence would have shown that neither Hall nor the other two employees who, the plaintiff claimed, had a motive for so doing had an opportunity to place the bloomers in the bag.

There was relevant evidence tending to show that Hall had both a motive and an opportunity to have placed the bloomers in the plaintiff's bag, and any evidence which disproves either motive or opportunity on the part of Hall is relevant testimony, but the defendant did not give this as his purpose in offering the evidence or assign it as one of his grounds of objection to the ruling of the trial court. The exact statement of the witnesses was not incorporated in the record— only the statement of counsel as to what it tended to prove— and his purpose in offering the same was made a part of the

record. Under the circumstances, there was no reversible error in this action of the court.

▮ The plaintiff also stated that sometime during the interview Mr. May left her alone in the room with Hall, instructing him to get a confession from her; that Hall grabbed her by the arms so roughly that they were badly bruised, and shook her violently, saying repeatedly: "Are you ready to tell Irving May you stole the bloomers? You know you stole them," When he turned her loose she fell to the floor, sick and vomiting; Hall then picked her up and threw her into a chair with such violence that her head was bruised by striking the back of it. A doctor, whom she consulted, and several neighbors and friends testified that within a few days after November 22nd they saw the bruises. To this evidence the defendant objected on the ground that the charge was for defamation and not for assault and battery. The defendant's witnesses denied that Hall was at any time during the interview in the room alone with the plaintiff. They testified that she did become nervous and hysterical and that Mr. May called Miss Crowder, of the personnel department, into the conference and requested her to take the plaintiff into the adjoining room and attend her; that as the plaintiff started to get up from a stool on which she was sitting she fell on the floor and had to be taken up by Mr. Hall and Mr. May.

Whether or not the plaintiff received the bruises during the interview was a question of fact. Their existence tended to corroborate her account of what took place, and there was no error in admitting this testimony.

▮ The court, at the request of the plaintiff, instructed the jury that if they believed from the evidence that Hall was manager of one of the floors of the defendant, and that he used the words alleged in the notice of motion, then he was acting within the course, or scope, of his employment, and the defendant was responsible for his act, unless excused because of the privileged occasion.

The defendant objected to this instruction on the ground that there was evidence tending to show that Hall was not acting within the scope of his employment, and whether he was or was not was a question for the jury.

The plaintiff testified that she had threatened to report Hall to the defendant because she had seen him and another lady employee acting improperly, and that Hall had said to her: "Did you say you saw any misconduct about me this evening?" To which she replied: "Yes, and I am going to tell the firm on you tonight and this is the last day I am going to work here if I have to work for you." To which he said: "Yes; when you do you lose your job."

The plaintiff related other incidents showing the hostility existing between Hall and herself. She stated that when Hall charged her with the theft he said: " 'If you leave this store tonight and never put your foot inside of here again I won't tell the firm on you. They might put you in jail if they knew you stole the bloomers,' and I stood there two or three seconds. I said: 'Mr. Hall, you won't have to tell the firm on me; I am going upstairs and tell Mr. May the truth. I am going to tell him why these bloomers are in my bag.' I began to kind of think he done it and I said to him: 'I am going to tell Mr. May the truth, because I thought Mr. May was going to believe me; Mr. May liked me.' "

From this and other evidence, the jury might have believed that Hall placed the bloomers in the bag for the purpose of having the plaintiff discharged. He had no authority either to employ or to discharge any employee. If this evidence be true, and it emanated from the mouth of the plaintiff herself, Hall was not acting within the scope of his employment, and the defendant was not responsible for his actions unless there was subsequent ratification thereof. Up to this occurrence it was merely a personal affair between employees of the same corporation.

It is well settled that when a servant, acting within the

scope of his employment, commits an injury, either negligently or wilfully, the master is responsible, but the application of the law to the particular facts of each case has given the courts considerable trouble. It is also well settled that if the facts are not disputed, the question is one of law for the court, but if the evidence is in conflict it is a question to be submitted to the jury, on proper instructions.

The defendant's testimony shows that it was a part of Hall's duty to examine packages in the possession of employees leaving the store at the close of the day's business, to ascertain whether or not any merchandise they might have was properly accounted for. It was not contemplated by the defendant that he would place property of the defendant in a package owned by an employee and then charge such employee with theft. This was no part of the service to the master. The plaintiff here is not a customer, but a fellow-employee. From her account of the incident, she knew that Hall was not engaged in the master's business when he made the accusation, and she determined to inform the master of the injustice that a fellow-employee had inflicted upon her. "The general idea is that the employee, at the time of doing the wrongful act, in order to fix liability on the employer, must have been acting in behalf of the latter and not on his own account." 18 R. C. L. 797.

The plaintiff relies upon the case of *Myers & Co.* v. *Lewis,* 121 Va. 50, 92 S. E. 988, 995, where the subject is discussed at some length. The court held that the test of the liability of the master was whether the tortious act complained of, if done in a non-tortious manner, was an act within the service of the master in the ordinary course of business, and said: "The true test is, was the service in which the act was done incident to the employment?"

The charge of theft, in the plaintiff's view of the evidence, was the conclusion of the purpose for which the merchandise had originally been placed in her bag. There is no question

about the fact that the placing of this merchandise in her bag was not within the scope of Hall's authority, and that the act was no part of the service due by him to his employer, nor was it incident to his employment. The act of charging the plaintiff with theft was the completion of a transaction undertaken by Hall not within the scope, or even apparent scope, of his employment.

The case of *Davis* v. *Merrill,* 133 Va. 69, 112 S. E. 628, cited by the plaintiff, was one in which a watchman employed by a railway company at a crossing was charged with the duty of raising and lowering gates to protect the public from injury by passing trains. An automobile party approached the crossing at night, found the gates down and no train in sight. They requested the watchman to raise them so they might proceed on their way. He grumbled, but finally complied with their request, and as they were crossing the railway track shot and killed a passenger in the automobile. The plaintiff alleged that the railway company was negligent in employing an unfit person for the position. The court held that the killing was done within the scope of the employment and that the company was negligent in retaining such an employee, after it knew, or by the exercise of reasonable care should have known, of his unfitness.

In the case of *Dalby* v. *Shannon,* 139 Va. 488, 124 S. E. 186, it was held that a clerk in a store who in attempting to kill a rat, negligently shot and put out the plaintiff's eye, was acting within the scope of his employment. This was an act negligently done in the service of the master.

The instant case is distinguishable from the case of *Hines* v. *Gravins,* 136 Va. 313, 112 S. E. 869, 118 S. E. 114. There Gravins charged the railway company with a shortage in a shipment of eggs. The circumstances were investigated by a special agent of the carrier and the thief was caught and confessed. Gravins went to the office of the railway company for the purpose of collecting the shortage, and just outside of the

office an angry colloquy took place between Gravins and an employee, whose duty it was to countersign tickets showing a loss of freight. The employee then used insulting words to the shipper, Gravins. It was held that the employee was acting within the apparent scope of his authority.

In the case of *Appalachian Power Co.* v. *Robertson,* 142 Va. 454, 129 S. E. 224, 225, Prentis, judge, discusses the question of liability of the master on account of the negligence of the servant, and quotes with approval from *Goodloe* v. *Memphis, etc., R. Co.,* 107 Ala. 233, 18 So. 166, 29 L. R. A. 729, 54 Am. St. Rep. 72, as follows: "The simple inquiry and true test is not whether a given act was done during the existence of the servant's employment, but whether it was in the course of the servant's employment, or outside of it."

If Hall did place the bloomers in the bag for the purpose of subsequently charging the plaintiff with the theft thereof, it could not be said that from the nature of his employment and the duties incident thereto there was any implied authority for his so doing; he had stepped aside from his employer's business. This fact was recognized by the plaintiff herself when she stated that she was going to report his conduct to the employer.

Therefore, it follows that it was error for the court to give the instruction heretofore cited. The defendant offered an instruction, refused by the court, which reads as follows:

"If the jury shall believe the statement of the plaintiff that she had on the twenty-second day of November, 1927, detected Harvey C. Hall, the floor manager of the defendant, in an act of impropriety and threatened to report him to the management of the store, and for that reason and in order to get rid of her the said Hall unjustly accused her of theft and for that purpose used the occasion of her leaving the store and took advantage of the rules and regulations of the store as regards employees, then the court instructs the jury that the said Hall was not acting in the usual course of his employment and not

within the scope of his authority, and there is no liability on the defendant for his acts in that respect and they shall find for the defendant."

There was no error in refusing this instruction. The vice in it is that it told the jury, in substance, that if Hall made the unjust accusation because of his desire to bring about the discharge of the plaintiff, this purpose was sufficient to relieve the master of liability. The intent, or motive, of the servant in committing the act is not sufficient to relieve the master. *Marion* v. *Chicago, etc., R. Co.,* 64 Iowa 568, 21 N. W. 86; 39 C. J. 1284.

It is the intent, or purpose, in uttering the slanderous language, coupled with the fact, if it be a fact, that Hall placed, or had placed, the merchandise in the plaintiff's bag, which would relieve the defendant.

The second objection to the instruction as offered is that it directs a verdict and entirely ignores that part of the evidence which tends to prove ratification. The plaintiff testified that she sought Mr. May for the purpose of informing him of the true situation, and he not only declined to hear her, but repeated the slanderous language of Hall without availing himself of the opportunity to make a reasonable investigation of the charge, and that he requested other employees to get her to confess to the theft. If the jury believed this evidence, then it is immaterial whether Hall was acting within the scope of his employment or not, because the defendant had ratified the unauthorized act of its agent and made his act its own, and hence is liable for the wrong to the plaintiff.

The jury might have believed that Hall was not acting within the scope of his employment at the time it is claimed he used the language complained of and that there was no subsequent ratification thereof by the defendant, and if the jury so believed they should have found a verdict for the defendant.

We find no error in the giving and refusing of other instructions to which objections are made.

The defendant's evidence contradicts that of the plaintiff with regard to the charge of theft, the ratification thereof, and the account of what took place in Mr. May's office, but, in our opinion, there was sufficient evidence to submit the issues to the jury.

There are other assignments of error; but inasmuch as the questions presented are unlikely to arise upon a new trial, it is needless to prolong this opinion by discussing them.

For the reasons given, the verdict of the jury and the judgment thereon are set aside and the case remanded for a new trial.

*Reversed and remanded.*