## CIRCUIT COURT OF THE CITY OF NORFOLK

Tula Giannini

v.

Francis Crociata et al.

December 12, 1980

Case No. (Law) L-80-1205

By JUDGE JOHN W. WINSTON

Claiming that she was libelled per quod and per se by the contents of a letter dated May 12, 1980, Tula Giannini seeks compensatory and punitive damages from Francis Crociata, Russell Stanger, and Walter Noona. Each of these defendants has demurred and by that pleading seeks dismissal of the suit.

The letter was allegedly composed, published, and circulated by all of the defendants. It advised Mrs. Giannini that her contract (as a musician) with the Virginia Orchestra Group would not be automatically renewed for the 1980-81 season and that an audition would first be required on a date to be selected. It also said the following which is the language Mrs. Giannini claims constitutes defamation:

> The quality of woodwind playing in the orchestra is becoming a matter of increasing concern to the artistic staff. As little as two years ago, the woodwinds of the Norfolk Symphony were roundly praised by critics as being remarkable in quality

for an orchestra of any size or budget. Recently such notices have been notably absent or alarmingly reversed, for example the Washington Star review following our recent Kennedy Center concert calling attention to woodwind intonation slips.

The decline in your performance has been a matter of notice to your music directors and guest conductors, many of your colleagues in the orchestra, and members of the musical community at large. This notice has all too frequently led to a repeated observation that your performance this season has adversely affected that of your colleagues around you. A number of your colleagues including your brother have mentioned to you your own chronic intonation problem. This, and your inattentiveness at nearly all Virginia Pops services this season indicate to us that your interests are not being served by our present relationship.

The letter was signed by Russell Stanger, conductor and music director of the Virginia Philharmonic, a symphony orchestra administered by the Virginia Orchestra Group, and by Walter Noona, conductor and music director of the Virginia Pops, an orchestra administered by the Virginia Orchestra Group. It was not signed by anyone else.

Addressed to Mrs. Giannini and presumably delivered to her through the United States mails (the Motion for Judgment does not comment upon the fact or means of delivery) the letter reflects copies sent to the following persons: (1) John Haley, personnel manager of the Virginia Orchestra Group; (2) Robert S. Sutton, president of the Board of Directors of the Virginia Orchestra Group; (3) Robert Sawyer, president of Local 125 American Federation of Musicians; (4) Michael Brubaker, union representative of the Virginia Orchestra Group; and (5) Cary McMurran, conductor and music director of the Virginia Classical Orchestra, a classical orchestra administered by the Virginia Orchestra Group.

In his separate demurrer Francis Crociata says that he should be dismissed because he did not sign the letter nor is he otherwise a party to it.

In each of their demurrers the three defendants also assert that they should be dismissed because:

(1) The letter is a privileged communication which stands in bar of this action.

(2) The words of the letter are not insulting nor do they tend to violence or breach of the peace.

(3) The words of the letter are not defamatory but mere opinion and cannot be the basis for this libel action.

A demurrer confesses the truth of the facts alleged in a motion for judgment and accepts all reasonable inferences therefrom.

Because it is there alleged that Francis Crociata together with Russell Stanger and Walter Noona and "with full knowledge of (Tula Giannini's) excellent reputation as a professional musician and with actual malice did compose, publish, and circulate" the letter in question, defendant Crociata can be held liable for defamation even though he did not sign it. *Barger* v. *Hood*, 87 W. Va. 78, 104 S.E. 280 (W. Va. 1920); *Taylor* v. *Kinston Free Press Co.*, 237 N.C. 551, 75 S.E.2d 528 (1953); *Storch* v. *Gordon*, 197 N.Y.S.2d 309 (1960). His demurrer based on that ground will therefore be overruled.

We turn now to the ground stated by all defendants that the letter is a privileged communication which stands in bar of this defamation action. Since it was a communication between employers Russell Stanger and Walter Noona and employee Tula Giannini and dealt with the status of her employment, this court holds that the occasion was a qualifiedly privileged one (not an absolutely privileged one). Thus Mrs. Giannini is entitled to the opportunity to prove, if she can factually, that this privilege was abused and thus lost. *Chalkley* v. *A.C.L. R.R. Co.*, 150 Va. 301, 143 S.E. 631 (1928); *Thalheimer Bros. Inc.* v. *Shaw*, 156 Va. 863, 159 S.E. 87 (1931); and *Kroger Co.* v. *Young*, 210 Va. 564, 172 S.E.2d 720 (1970).

But such qualified privilege is not lost as a matter of law if the communication was not published. Thus so far as the common law defamation count (Count I) is concerned Tula Giannini's action is barred if the various defendants had the privilege to circulate all of the copies that are indicated on the face of the letter. (No other publication is alleged by the plaintiff in her motion for judgment or suggested by the letter which was attached

to it. And of course plaintiff's disclosure of the letter's contents by incorporating it into her present suit is not a publication which is actionable.) *Chalkley* v. *A.C.L. R.R. Co.*, *supra*; *Thalheimer Bros. Inc.* v. *Shaw*, *supra*; and *Kroger Co.* v. *Young*, *supra*.

The law regarding disclosure of defamatory information on a privileged occasion is also well stated in *Peoples Life Ins. Co.* v. *Talley*, 166 Va. 464, 468, 186 S.E. 42, 44 (1936). Thus it may be communicated by one who has an interest or a duty to a person having a corresponding interest or duty.

Here the persons who received the letter had an interest or a duty corresponding to that of the defendants. It is noted from the letter that Tula Giannini's employment contract with the Virginia Orchestra Group was subject to the master agreement between it and its musicians represented by Local 125 of the American Federation of Musicians. Such master agreement (Article 4, Section B) provided for automatic inclusion in the roster of musicians holding orchestral positions for the next season unless either the orchestra member notified the Music Director in writing to the contrary or the Music Director notified the orchestra member in writing that an audition would first be required. In the latter situation ten days' notice had to then be given to such orchestra member before the audition.

The letter was sent out in compliance with these contractual requirements. Copy was sent to John Haley, the personnel manager, who kept the records of the orchestra members and was expected to notify Mrs. Giannini of the audition date; to Robert S. Sutton, president of the Board of Directors, who was interested in the musical status of his orchestras and their musician members, as well as their image with the musical public which supports them; Robert Sawyer, the president of Local 125 of the American Federation of Musicians, of which Union Mrs. Giannini was a member and which Union both had the master contract with the Virginia Orchestra Group and a strong interest in the ongoing musical relationship between its members and that Group; Michael Brubaker, the union representative who was a liaison between the orchestra members, the union, the Virginia Orchestra Group and its music directors and who could thus intercede on behalf of Mrs.

Giannini; and Cary McMurran, who as conductor and music director of one of the Virginia Orchestra Group, had an interest in Mrs. Giannini as one of his potential musicians under the contract.

All of these persons thus having an interest or a duty corresponding to that of the defendant conductors and music directors and of the defendant executive director of the Virginia Orchestra Group, there was no publication violating the privileged occasion. Hence the demurrer will be sustained on that ground so far as the common law count of defamation is concerned and Count I will thus be dismissed as it now reads.

Of course, Mrs. Giannini may amend Count I by designating additional and unprivileged disclosures if she wishes and can factually do so.

The other grounds for the demurrers put forward by all defendants are that the words are not legally insulting and do not tend to violence or breach of the peace, and that they express constitutionally protected opinions in any event.

Count II of her Motion for Judgment sets forth allegations which paraphrase the language and interpretation of Virginia Code § 8.01-45. Under that statute publication of the words used is not required as in the case of common law defamation. They can be actionable under the statute if written only to Mrs. Giannini. *Carwile* v. *Richmond Newspapers, Inc.*, 196 Va. 1, 82 S.E.2d 588 (1954).

Thus the question becomes, can a jury find these words actionable under the statute?

What the words said to Mrs. Giannini was this: "We have noted a recent decline in the quality of your performance as a woodwind player (flutist) with the orchestras which we conduct and of which you are a member. Specifically we have taken note of your chronic intonation slips and have observed this has adversely affected the playing of your woodwind colleagues. What we have ourselves seen has also been commented upon by others, including our guest conductors, your orchestra colleagues, your brother, members of the musical public, and by music critics in print." These words here paraphrased were written by professional musical directors and conductors to a professional member of their orchestras in a communication called for

by their mutual contract and in explanation of the reason for the reaudition being required of her.

Under these circumstances they are not actionable as a matter of law since, as used, the words express an opinion by her directors and conductors of Mrs. Giannini's musical performance with their orchestras. The words did not become actionable merely because the writers also stated that their opinion of her performance was shared by others. The words represent legitimate critical opinion of one who professionally performs in public, even if the performer disagrees with it or is embarrassed by it or even if such opinion is unfair or intentionally false. As used the words do not violate our "insulting words" statute.

There is further reason why the words as used here are not actionable. That is because the right of defendants Stanger and Noona to express their opinions concerning the quality of Mrs. Giannini's musical performance is protected by the "free speech" provisions of both the United States and Virginia constitutions. Whether she is here a public figure or a private person (and this Court does not now resolve that issue) she cannot by a defamation action chill the defendants' constitutional right to express to her their opinion of her professional performance as a member of their orchestra, whether such opinion be sincerely believed or wrongful or false. *See Gertz* v. *Robert Welch, Inc.,* 418 U.S. 323 (1974), and *Rinaldi* v. *Holt, Reinhart, and Winston, Inc.,* 42 N.Y.S.2d 369, 366 N.E.2d 1299 (1977). This is so even though our defendants are not members of the press or publishing companies but individual persons. See *Jacron Sales Co., Inc.* v. *Sindorf,* 276 Md. 580, 350 A.2d 688 (1976), *Bryan* v. *Brown,* 399 So. 2d 577, 583 (Ala. 1976), and *Restatement of the Law (Second), Torts, 2d,* § 580 B, page 225 (discussing this effect of *Gertz*).

Because the words as used are not actionable against their users (Russell Stanger and Walter Noona), they are likewise not actionable against their alleged composer and circulator (Francis Crociata).

Thus on the remaining grounds stated the demurrers will be sustained as to each of the defendants, Francis Crociata, Russell Stanger, and Walter Noona.

Counsel for defendants is requested to present an appropriate order setting out these rulings, noting the

parties' objections to them and reserving to Mrs. Giannini the right to file an amended Motion for Judgment regarding additional publication within fifteen days from entry of the order, otherwise the matter is to stand dismissed with prejudice as of that date.