# CIRCUIT COURT OF THE CITY OF RICHMOND

Kim Taylor

v.

Southside Voice, Inc.,
and Jack J. Green

July 19, 2011

Case No. CL10-4542-00

By Judge Benjamin N. A. Kendrick

This case came before the Court, sitting by designation for the Circuit Court of the City of Richmond, on July 8, 2011, on a hearing on Defendants' Demurrer, Plaintiff's opposition thereto, and Defendant's reply. Having taken the Demurrer matter under advisement and after reviewing the memoranda of law and arguments submitted by counsel, the Court issues the following opinion.

## I. *Factual and Procedural Background*

Southside Voice, Inc., is a corporation that runs a for-profit newspaper entitled *The Richmond Voice* ("The Voice"), catering to readers in the Richmond, Virginia, metropolitan region. The Voice routinely runs an opinion page, entitled "The Voice Unleashed," which became the subject of a previous lawsuit in July 2009. Mr. Kim Taylor brought his first suit against The Voice concerning an article written by Kandise Lucas, published on June 10, 2009, which alleged that Taylor, a middle school teacher in Henrico County, Virginia, had physically and mentally abused students in his Special Education classroom. Taylor's complaint, filed in the Circuit Court for the City of Richmond, alleged that statements made in The Voice article about Taylor's actions towards students were defamatory and libelous. On March 17, 2010, Judge Hughes of the Richmond Circuit

Court ruled that Lucas' article published by The Voice included defamatory language, and Taylor was awarded compensatory and punitive damages.

Following this judgment, The Voice ran a second article in the March 24-30, 2010, edition of their opinion section, asserting that the Richmond Circuit Court's decision in favor of Taylor was incorrect. Defendant Jack Green, the author of the second article, did not mention Taylor's name explicitly but referred to a "bevy of evidence" supporting The Voice's arguments. Green also discusses the obvious discord between the Court, the jury, and The Voice. In response to this second publication, Taylor brought a second lawsuit against The Voice for the allegedly defamatory statements contained in the second article. Count I of the Complaint alleges common law defamation and libel while Count II alleges insulting words pursuant to Virginia Code § 8.01-45.

Defendants filed a Demurrer to both counts, arguing that Plaintiff's Complaint failed to plead a cause of action for which relief could be granted. Plaintiff has filed a Brief in Opposition to Defendants' Demurrer, arguing that it has stated a cause of action as to Count I. During oral argument, Plaintiff stipulated that Count II was subsumed by Count I. The Court therefore considers only the demurrer to Count I.

## II. *Discussion*

The purpose of a demurrer is to test the legal sufficiency of a pleading. *Glazebrook v. Board of Supervisors*, 266 Va. 550, 554, 587 S.E.2d 589 (2003). A demurrer does not test the proof of a pleading but rather the pleading's legal sufficiency. *Id.* A court will sustain a demurrer when the pleading "lacks sufficient definiteness to enable the court to find the existence of a legal basis for its judgment." *Hubbard v. Dresser, Inc.*, 271 Va. 117, 122, 624 S.E.2d 1 (2006).

Moreover, a demurrer admits as true the facts as alleged in the Complaint, including "any facts that may be reasonably and fairly implied and inferred from those allegations." *Yuzefovsky v. St. John's Wood Apts.*, 261 Va. 97, 102, 540 S.E.2d 134 (2001). Accordingly, this Court considers the facts in the light most favorable to the Plaintiff. *Evans v. Evans*, 280 Va. 76, 82, 695 S.E.2d 173 (2010). The Court, however, will not "admit the correctness of the conclusions of law found in the challenged pleading." *Yuzefovsky*, 261 Va. at 102. If the Complaint refers to a previous suit and relies upon that proceeding or outcome for a right of action, the Court "will take judicial notice of the matters appearing in the former case." *Fleming v. Anderson*, 187 Va. 788, 794-95, 48 S.E.2d 269 (1948).

Defendants collectively demur to Count I for common law defamation/ libel. Defendants argue that Plaintiff has failed to identify a statement actionable as a matter of law. For reasons stated below, the Defendants' collective demurrer to Count I is sustained with prejudice.

The *prima facie* elements of defamation include: (1) publication by the defendant to at least one third party; (2) an actionable statement; and, (3) requisite intent. *Echtenkamp v. Loudoun County Public Schools*, 263 F. Supp. 2d 1043, 1061 (E.D. Va. 2003) (citing *Chapin v. Knight-Ridder, Inc.*, 993 F.2d 1087, 1092 (4th Cir. 1993)). In the present case, the first *prima facie* element is not at issue as the article was published in a newspaper. The third element of requisite intent is likewise not challenged in this demurrer. This leaves only the issue of an actionable statement.

On demurrer in a defamation suit, the trial judge is responsible for determining whether, as a matter of law, the allegedly defamatory statements are actionable. *Hyland v. Raytheon Tech. Servs.*, 277 Va. 40, 47, 670 S.E.2d 746 (2009). To be actionable, the statement must be both false *and* defamatory. *Moore v. PYA Monarch, L.L.C.*, 238 F. Supp. 2d 724, 727 (E.D. Va. 2002). Thus, statements of opinion have generally been held to be not actionable and are protected, as they cannot be proven true or false. *Gibson v. Boy Scouts of Am.*, 360 F. Supp. 2d 776, 781 (E.D. Va. 2005); *Government Micro Resources, Inc.*, 271 Va, 29, 40, 624 S.E.2d 63 (2006). Words that cannot be interpreted as a statement of facts by the reasonable person cannot be the basis of a defamation action. *Jordan v. Kollman*, 269 Va. 569, 612 S.E.2d 203 (2005). However, a remark may indirectly or through implication or innuendo constitute defamation. *Carwile v. Richmond Newspapers*, 196 Va. 1, 82 S.E.2d 588 (1954).

The line between fact and opinion is far from clear. The body of Virginia case law on defamation reveals that this determination has historically proven to be highly dependent on the circumstances surrounding each particular case. *See Yeagle v. Collegiate Times*, 255 Va. 293, 497 S.E.2d 136 (1998) (describing a fictional and derogatory job title as "rhetorical hyperbole" and clearly not an actionable opinion); *Richmond Newspapers v. Lipscomb*, 234 Va. 277, 362 S.E.2d 32 (1987) (finding characterization such as "disorganized, erratic, forgetful, and unfair" to be actionable); *Chaves v. Johnson*, 230 Va. 112, 335 S.E.2d 97 (1985) (finding the description of inexperience to be a relative statement and thus not an actionable opinion); *Edwards v. Arlington Hosp. Ass'n*, 23 Va. Cir. 396 (1991) (finding the term "unreliable" to be actionable and thus meriting the overruling of a demurrer); *Giannini v. Crociata*, 12 Va. Cir. 475 (1980) (finding the phrases "chronic intonation problem" and "inattentive" during performances to be statements of opinion and thus not actionable); *Echtenkamp v. Loudoun County Public Schools*, 263 F. Supp. 2d 1043 (E.D. Va. 2003) (describing plaintiff as "abrasive, unprofessional, and rude" as actionable); *Gibson v. Boy Scouts of Am.*, 360 F. Supp. 2d 776 (E.D. Va. 2002) (explaining that a characterization of "unfit" is not provably false and thus not actionable).

In the present case, the Complaint cites specific portions of the second article, referencing "a bevy of evidence proving that the information [in the first article] . . . was accurate." At oral argument, Plaintiff's counsel also

referenced language in the article referring to the influence of politics on the Richmond Circuit Court's decision and claimed that this, too, could be read as defamatory.

The parties agree that, in deciding whether a statement is fact or opinion, any allegedly defamatory statement must be read not in words or phrases but as a whole, and in context. *See Hyland,* 277 Va. at 47-48. The full sentence at the center of the argument from the article reads as follows: "Unfortunately, the judge and jury in the case did not feel the same way, despite a bevy of evidence proving that the information in the letter was accurate, albeit subjective."

The parties disagree, however, as to the implication of that sentence in the context of the entire article. Plaintiff insists that the article, as a whole, indirectly, if not directly, defames Plaintiff by stating that the court proceeding was a sham, decided not on the facts, but through courtroom politics and "the maneuvering of counsel who treat facts casually." Plaintiff argues that the implication of the entire article is that the court overlooked a plain truth about Plaintiffs indiscretions with special needs children. Thus, Plaintiff argues that he is defamed by a charge that the original allegations are true, regardless of the trial outcome.

Defendants argue that the article is a commentary on a court proceeding and not an attack on Plaintiff. In essence, Defendants argue that the article calls into a question a trial in which The Voice was surprised to have lost, because it thought it had put on a strong enough case to win. Defendants then point to the "bevy of evidence" statement itself, arguing that the phrases "[u]nfortunately, the judge and jury did not feel the same way" and "albeit subjective" show that, no matter what The Voice thought of its own case, anyone's perspective on the outcome of the trial and the import of the original article were both matters of opinion. This is bolstered, argues Defendant, by the final sentence of the article, which reads, in part, "we are still scratching our heads, wondering why we were found liable." Defendants state that this is clearly an opinion on the outcome of the trial, having nothing to do with Plaintiff himself. Defendants go as far as to suggest that, if any defamation claim were to arise from this second article, it would be the claim of Judge Hughes and Plaintiff's counsel.

Taking these arguments into account, the Court finds the statements in the article pertaining to the Plaintiff to be subjective in nature and thus not actionable. Much of the language in the article, including discussion of the role of alleged court politics, describes the validity of the proceedings in the previous trial. The veracity of these statements has implications for the officers of the court rather than the parties involved in the suit. Thus the only statement remaining that could reasonably be read as pertaining to Plaintiff's own character is the passage about a "bevy of evidence." The Court finds this passage's express or implied meaning to be a statement of opinion about the quality and quantity of evidence that The Voice produced

at trial. In the context of the entire article, this statement expresses a belief that The Voice had put on enough evidence to win, but it lost due to reasons beyond its control.

Without expressing an opinion as to whether other statements in the article related to individuals other than Plaintiff are actionable under defamation law, the Court notes its concern regarding the implications of labeling published criticism of a courtroom proceeding as defamatory. Certainly, a litigant or third party could cross the line into provably true or false derogatory statements about a court or its officers. However, the right to criticize a government entity is fundamental to the right to free speech and should not be curtailed but for the most egregious of circumstances.

## III. *Conclusion*

For the reasons stated herein and based on the parties' agreement that Count I subsumes Count II, the Court sustains with prejudice Defendants' demurrer as to Count I.