## CIRCUIT COURT OF THE CITY OF RICHMOND

J. B. Corr

v.

Edward J. Mazur et al.

November 22, 1988

Case No. LL-3250-4

By JUDGE RANDALL G. JOHNSON

This case involves plaintiff's claim that he was improperly denied tenure as a member of the faculty at the Marshall-Wythe School of Law at the College of William and Mary. The three-count motion for judgment alleges breach of contract, deprivation of constitutional rights, and common law defamation. Named as defendants in Count I are Paul R. Verkuil in his official capacity as President of the College, and Edward J. Mazur in his official capacity as Comptroller of the Commonwealth. With regard to Count II, the named defendants are Timothy J. Sullivan, Dean of the School of Law, Glenn Coven, a Law School professor, and Verkuil, again in his official capacity as President. Dean Sullivan is the only named defendant in Count III. Defendants have moved for summary judgment as to each count. For the reasons which follow, the motions for summary

judgment as to the claims of breach of contract and defamation will be granted. The motion for summary judgment as it relates to plaintiff's claim of deprivation of constitutional rights will be denied.

1. *Facts*

Plaintiff was initially hired by the Marshall-Wythe School of Law in 1980 as a non-tenured Assistant Professor. The written contract entered into by plaintiff in 1980, which was effective for the 1980-1981 academic year, provides, in pertinent part, as follows:

> The College of William and Mary grants tenure to a full-time faculty member after seven years of service, "provided that if part of the seven years is represented by service other than at the College, he may be required to serve a probationary period of as much as four years at the College immediately before tenure is granted, even if the total full-time service thereby exceeds seven years." In your case, you will be eligible to be considered for tenure during the 1985-86 session, with tenure effective, if the decision is favorable, in September 1987.

Plaintiff remained on the faculty under successive one-year contracts until the end of the 1986-1987 academic year, plaintiff having been promoted to Associate Professor, also without tenure, in 1982. While none of plaintiff's annual written contracts after his initial contract mention tenure, the College's Faculty Handbook which was in effect throughout his employment contains provisions almost identical to the language in his initial contract quoted above.

In 1985, plaintiff applied for tenure. Pursuant to the College's published "Procedures for Retention, Promotion, and Tenure" ("Procedures"), plaintiff's application was first considered by the School of Law Faculty Status Committee ("FSC"). The FSC, by a vote of four to two, with one abstention, recommended that plaintiff be awarded tenure. Defendant Coven, a member of the FSC, cast one of the negative votes.

Plaintiff's tenure application was then sent to defendant Sullivan as Dean of the Law School. Sullivan recommended against tenure. Again pursuant to the Procedures, plaintiff's application next went to the full Law School faculty which, in spite of Sullivan's negative recommendation, voted seventeen to eight in favor of tenure. Defendant Coven again cast one of the negative votes. In spite of the favorable vote by the full faculty, however, Sullivan adhered to his earlier recommendation against tenure, whereupon plaintiff instituted an administrative appeal to the Procedural Review Committee of the Faculties ("PRCF"), an independent faculty committee whose recommendations, according to plaintiff, are almost always followed by ranking College officials. The PRCF, after reviewing plaintiff's application and the written records assembled up to that time, unanimously concluded that the decision to deny tenure to plaintiff "was based on inadequate consideration of his qualifications," and that the evaluation of plaintiff was "seriously flawed." The PRCF further "requested" that plaintiff's tenure application be reconsidered, and that such reconsideration begin with the Faculty Status Committee which, it must be remembered, originally recommended *in favor of* tenure. In fact, after the PRCF asked the FSC to reconsider plaintiff's application, the FSC reported that the *PRCF's* report was, itself, "so seriously flawed that it cannot be permitted by the College to stand as the report of the Procedural Review Committee." In any event, the FSC did not change it initial recommendation in favor of tenure, nor did Dean Sullivan change his recommendation against tenure. The College's Provost, to whom Sullivan's recommendation was sent, also recommended against tenure, and defendant Verkuil, the President, refused to reverse that recommendation. Accordingly, tenure was denied, and plaintiff was given a "terminal" contract for the 1986-1987 academic year. This litigation followed.

## 2. *Breach of Contract*

Plaintiff alleges that defendants breached his employment contract with the College by failing to follow the procedures applicable to tenure applications set out in the Procedures for Retention, Promotion, and Tenure, and

in the Faculty Handbook.[1] Specifically, plaintiff alleges that his contract was breached in four separate ways. First, plaintiff states that defendants breached his contract by failing to give plaintiff an opportunity to reply to all material considered in the tenure application. Second, plaintiff alleges that a breach occurred when the College made the tenure decision on the basis of "impermissible *ex parte* contacts" and an "intentionally altered record." Third, plaintiff argues that his contract was breached by the College's failure to follow the unanimous recommendations of the PRCF. And finally, plaintiff says that a breach occurred because "plaintiff's publication record, when measured by any rational objective or subjective standard, satisfied the College's substantive criteria, and in fact was far superior to that of other faculty members tenured at or around the same time as plaintiff."[2] The court concludes that these alleged breaches of contract are not actionable at law.

In deciding this issue, a distinction must first be made between those aspects of a college's tenure policy which involve objective rules of procedure and those which involve the subjective thought-processes and analyses of those persons charged with the responsibility of recommending and/or awarding tenure. With regard to the former, a disappointed applicant for tenure may well be able to maintain a breach of contract action if he can show that an identifiable, objective procedure was violated during the application and review process. For example, where a college has promised that a faculty member will be considered for tenure after a certain number of years of employment, the college's failure to allow that faculty member to apply for tenure after the specified number of years may constitute a breach of contract. By the same token, a college's failure to convene a tenure panel or

---

[1] Defendants deny that the Procedures and Faculty Handbook are a part of plaintiff's employment contract with the College. For purposes of this opinion, however, the court assumes that they are.

[2] A tenure applicant's publication of books, articles, and treatises is one of the factors considered in granting or denying tenure.

to otherwise "consider" the faculty member's tenure application might also give rise to a breach of contract claim.

On the other hand, it is the opinion of this court, as well as the overwhelming majority of other courts which have spoken on the issue, that the subjective determinations of those persons making tenure recommendations and decisions are not the proper subject of judicial intervention. *See, e.g., Board of Curators v. Horowitz*, 435 U.S. 78 (1978); *Clark v. Whiting*, 607 F.2d 634 (4th Cir. 1979). To the contrary, the very concept of academic freedom, which is so basic to our society, demands that college and university officials be free to make academic decisions such as whether or not to grant tenure without the specter of having their decisions reviewed, and possibly reversed, by a judge or jury. Indeed, to subject such decisions to judicial inquiry would create the intolerable possibility of having decisions made by life-long academicians reversed by judges or jurors who, by comparison, have little or no training in, or familiarity with, the academic setting. Moreover, if we as a nation are to maintain and encourage the individuality, diversity, and distinctness existing between and within our many institutions of higher learning, we must allow those institutions to make their own academic decisions unfettered by judicial scrutiny. In short, we must not turn the courts into "super-tenure committees."[3]

With these principles in mind, the court concludes that plaintiff's fourth allegation of a breach of contract is clearly outside of this court's power to entertain. Specifically, whether plaintiff's publication record, "when measured by any rational objective or subjective standard," does or does not meet the School of Law's criteria for tenure, is precisely the type of issue which should only be determined by the school itself, and any attempt by the court to interfere with that determination would make the court the "super-tenure committee" it must not be.

---

[3] Of course, this is not to say that all academic decisions are immune to legal attack. Where, for example, employment and tenure decisions are made on the basis of unlawful discrimination, or are made in derogation of other constitutionally or statutorily protected rights, the courts should, and must, intervene.

With regard to plaintiff's other three allegations of breach of contract, those allegations must also fail. Rule 3:18 of the Rules of the Supreme Court of Virginia provides that summary judgment shall be entered if there are no material facts genuinely in dispute. Plaintiff's first allegation of breach of contract is that he was not given an opportunity to reply to all material in the tenure package. In support of this allegation, plaintiff points to the provisions of the School of Law's Procedures for Retention, Promotion, and Tenure which require that "[t]he substance of all information considered by the [Faculty Status] Committee *shall be* reduced to writing and *shall be* available as soon as reasonably practicable to the faculty member under consideration for review and comment." Emphasis added. Further, as plaintiff points out, the Procedures provide that:

> Every faculty member . . . shall be afforded an adequate opportunity to present . . . all information relevant to his or her status . . . . Each member shall be afforded an opportunity to respond to any material considered.

Plaintiff argues that these provisions were breached by the College because (1) defendant Coven and others did not reduce to writing their personal evaluations of plaintiff in the Faculty Status Committee; (2) defendant Sullivan relied on an adverse report regarding plaintiff received after the FSC recommendation; and (3) defendant Sullivan's negative recommendation was reinforced, according to Sullivan, by "concerns regarding [plaintiff's] contribution to law school governance." Plaintiff arguing that he never had an opportunity to review or comment on such concerns because there was nothing in writing regarding "law school governance." These arguments are not well-founded.

With regard to the failure of Coven and others on the Faculty Status Committee to reduce their evaluations to writing, plaintiff ignores the fact that that Committee recommended *in favor of* granting tenure. Plaintiff was certainly not prejudiced by that recommendation. Moreover, the Procedure's requirement that "all information considered by the [Faculty Status] Committee . . . be reduced to

writing" cannot reasonably be interpreted as requiring each individual committee member to reduce to writing his or her own thought processes in determining whether or not to vote for tenure. Rather, the Procedures require that all information brought to the attention of the committee be reduced to writing. Indeed, to require the individual thoughts of each committee member to be recorded would not only destroy our concept of academic freedom, it would unquestionably deter most faculty members from agreeing to serve on such committees.

With regard to Dean Sullivan's reliance on a report received after the FSC recommendation, it must again be remembered that such recommendation was favorable. Clearly, plaintiff cannot argue that he was prejudiced by the fact that the FSC did not have the adverse report before it when it made its favorable recommendation. In addition, plaintiff has cited no provision in the Procedures or Handbook which prohibit Dean Sullivan from considering such "after-acquired" information. In any event, any harm to plaintiff which possibly could have resulted from the Dean's consideration of the adverse report was completely cured when the Dean, prior to his decision, provided plaintiff with a copy of the report for rebuttal, and when President Verkuil requested *and received* from plaintiff's lawyer all rebuttal to the report which plaintiff wanted the President to consider.

Finally, plaintiff again misinterprets the requirements of the Procedures and Handbook when he complains that Dean Sullivan improperly relied upon unwritten policies concerning "law school governance" in reviewing the Faculty Status Committee's report. As the record makes clear, Dean Sullivan's concerns were not related to specific College policies or regulations but were aimed at written comments made by plaintiff in response to the Faculty Status Committee's report. It simply makes no sense to assert that plaintiff's comments to that report, which comments are specifically allowed and encouraged by the Procedures and Handbook, and which comments were specifically made by plaintiff in an effort to persuade the Dean to follow the FSC's recommendation, should not have been considered by the Dean. Moreover, the Dean's concerns about "law school governance" are precisely the type of subjective consideration which, as discussed above, may

not be inquired into by the court. In any event, even the report of the Procedural Review Committee of the Faculties, relied upon so heavily by plaintiff, states that plaintiff's comments "were legitimately a part of the written record considered by the Dean." While the PRCF did question whether the Dean gave too much consideration to plaintiff's post-FSC comments as opposed to his overall record at William and Mary, such questions, again, are matters which must be left outside of the courtroom.

Plaintiff's second breach of contract claim involves his allegation that the College's decision was made on the basis of impermissible *ex parte* contacts and an intentionally altered record. Specifically, plaintiff alleges that Dean Sullivan wrote a memorandum to the Provost which was not provided to the plaintiff, that Sullivan deleted "highly favorable" material from the record sent to the Provost, and that Sullivan added "critical materials" to the official record. Taking the last matter first, the only material which Dean Sullivan "added" to the record was plaintiff's personnel file. The court does not see how such an "addition" constitutes a breach of contract. With regard to materials which were "deleted," the record does not show that such materials were not considered by the Provost, but only that they were not available to the Procedural Review Committee. As already noted, however, the PRC requested that the denial of tenure be reconsidered by the College, so plaintiff suffered no harm by the absence of certain material from his file. In any event, the record *was* complete at the time plaintiff's application was reviewed by the College President. Thus, any potential harm which the absence of those records caused was completely cured at that point. This is also true with regard to the "*ex parte*" memorandum written to the Provost by Dean Sullivan.[4]

---

[4] In making this ruling, the court does not mean to condone the actions complained of. It is certainly wrong for Dean Sullivan or any college official to "doctor" tenure records. The court believes, however, that such practices can and should be addressed by the College itself, and the College does have internal mechanisms for that purpose. The only issue before the court is whether defendants' actions constitute an actionable breach of contract. Because the effects of defendants' actions were cured during the review process, the court simply

Plaintiff's final breach of contract claim is that the College failed to follow the unanimous recommendation of the Procedural Review Committee of Faculties. As has been pointed out previously, however, the PRCF simply "requested" that plaintiff's tenure application be sent back to the Faculty Status Committee. And as has also been pointed out previously, the FSC had originally recommended in favor of tenure. Thus, any "breach" which might have occurred by not sending plaintiff's application back to the FSC was immaterial. Moreover, there is no provision in the Procedures, the Handbook, or elsewhere which requires that the PRCF's recommendation be followed. Accordingly, the College did not breach any contract by failing to follow that recommendation here.

In light of the above, the court finds that with regard to plaintiff's claim for breach of contract, there are no material facts genuinely in dispute, and defendants' motion for summary judgment as to Count I of the motion for judgment is granted.

## 3. *Deprivation of Constitutional Rights*

Count II of the motion for judgment alleges that the College's denial of plaintiff's tenure request deprived him of his right to free speech because such denial was in retaliation for his having openly opposed the hiring of a fellow faculty member who had previously been a visiting professor at the school. Specifically, plaintiff stated in a faculty meeting at which the proposed hiring was discussed, and which was held prior to plaintiff's applying for tenure, that widespread rumors of the applicant's inappropriate sexual activities with students should investigated, as should reports that the applicant repeatedly appeared at an early morning class hung over and unable to teach properly. According to plaintiff, defendant Coven responded to plaintiff's statements by threatening to falsify plaintiff's tenure application and otherwise work against plaintiff's acquiring tenure. Plaintiff further alleges that Dean Sullivan joined in Coven's efforts to deny him tenure.

holds that no actionable breach exists.

Defendants' motion for summary judgment as to Count II is based on three grounds. First, defendants argue that plaintiff's statements at the faculty meeting are not protected free speech because they were based solely on rumors from students. Second, defendants assert that the decision to deny tenure was based not on any desire to retaliate against plaintiff, but on a lack of plaintiff's qualifications for tenure. Third, defendants argue that the court lacks jurisdiction to consider federal causes of action under 42 U.S.C. § 1983.

With regard to whether plaintiff's statements made at the faculty meeting were based on rumors, that fact is, at this stage of the litigation, immaterial. The federal and state constitutions guarantee freedom of speech. They do not guarantee only well-considered speech or speech made after years of careful study. They guarantee free speech. While irresponsible statements made solely upon unfounded rumors may well subject the speaker to civil liability for libel or slander, our constitutions forbid government officials from deciding what speech will or will not be allowed. Since the statements made by plaintiff here clearly touch upon matters of public concern-- that is, the teaching effectiveness and improper conduct of a public employee -- that speech is *prima facie* protected. *See e.g., Pickering v. Board of Education*, 391 U.S. 563 (1968); *Piver v. Pender County Board of Education*, 835 F.2d 1076 (4th Cir. 1987). Of course, it is still for a jury to determine whether plaintiff's statements were so unfounded as to legitimately give defendants cause to question plaintiff's own judgment and qualifications. At this point, however, a material fact is genuinely in dispute, and summary judgment is inappropriate.

Similarly, defendants' assertion that tenure was denied because of plaintiff's lack of qualifications, and not in retaliation for his statements about the subject faculty member, also cannot be disposed of by way of summary judgment. While defendants point to numerous facts in the records in an attempt to convince the court that plaintiff cannot prevail on this issue, a motion for summary judgment cannot take the place of a trial. Summary judgment can only be entered if there are no material facts genuinely in dispute. The court feels that plaintiff has cited sufficient facts in the record, particularly in the deposition

testimony of Coven and Sullivan, to withstand defendants' summary judgment motion.[5]

Lastly, defendants argue that this court lacks jurisdiction to entertain federal causes of action under 42 U.S.C. § 1983. This simply is not true. As a court of general jurisdiction, this court has jurisdiction to hear all claims, state and federal, unless such jurisdiction is expressly denied by statute. Since there is no federal statute granting federal courts exclusive jurisdiction under 42 U.S.C. § 1983, jurisdiction unquestionably exists here. *See Testa v. Katt*, 330 U.S. 386 (1947).

Aside from the jurisdictional issue, defendants' real argument seems to be that they are immune from suit under 42 U.S.C. § 1983 under the doctrine of sovereign immunity, and it is true that state officials acting within the color of their office are generally immune from suit. *Pennhurst State School & Hospital v. Halderman*, 465 U.S. 89 (1984). Where, however, a state officer violates the federal constitution, he loses whatever immunity he otherwise has:

> *Ex parte Young* teaches that when a state officer acts under a state law in a manner violative of the Federal Constitution, he "comes into conflict with the superior authority of that Constitution, and he is in that case stripped of his official or representative character and is subjected *in his person* to the consequences of his individual conduct. The State has no power to impart to him any immunity from responsibility to the supreme authority of the United States." *Scheurer v. Rhodes*, 416 U.S. 232, 237 (1978) citing *Ex parte Young*, 209 U.S. 123, 159-160 (emphasis supplied by the *Scheurer* Court). *See also Pennhurst, supra*, at 104-105, reaffirming *Young's* holding.

---

[5] The parties have stipulated that the depositions may be used for purposes of defendants' motion. See Rule 4:7(e) of the Rules of the Supreme Court of Virginia.

Moreover, our own Supreme Court has held that the Commonwealth of Virginia affords no absolute sovereign immunity to state officers sued in their individual capacities under state law for intentional torts. *Elder v. Holland*, 208 Va. 15, 155 S.E.2d 369 (1967). Surely, state officials sued for intentional acts under federal law can enjoy no greater immunity. Accordingly, defendants' motion for summary judgment as to Count II of the motion for judgment is denied.

## 4. *Defamation*

The third count of the motion for judgment seeks to set out a cause of action for common law defamation, plaintiff claiming that Dean Sullivan made false and defamatory statements concerning plaintiff's qualifications for tenure in two memoranda written by Sullivan as a part of the review process. A review of the alleged defamatory statements, however, clearly shows that they do not give rise to a cause of action.

With only one exception, each of the statements cited by plaintiff as being defamatory are merely Sullivan's opinion about plaintiff's qualifications. Specifically, Sullivan wrote that he could not agree that plaintiff's writing constitutes "a significant contribution to the body of legal literature"; that plaintiff "has not met" the college's publication standard; that the college's publication standard "cannot be met by quantitative achievements"; that plaintiff's scholarship "does not meet the requisite standards"; and that plaintiff's scholarship "does not meet the standard embodied in our procedures if those procedures are applied, as they must be, with a view to improving the faculty."

Defamation is the offense of injuring a person's character, fame, or reputation by false and malicious statements. 12A M.J., *Libel and Slander*, § 2. To be actionable, such statements must be communicated as fact, and not as opinion. In order to be considered a statement of fact, the statement must be "capable of being objectively characterized as true or false." *Potomac Valve & Fitting, Inc. v. Crawford Fitting Co.*, 829 F.2d 1280, 1287 (4th Cir. 1987). Each of the statements made here was unquestionably offered by Sullivan as his *opinion*, and there is

absolutely no reading of those statements which allows any other interpretation. Since statements of opinion are not actionable, plaintiff's defamation claim must be dismissed.

Moreover, even if statements of opinion were actionable generally, the majority of courts have held that opinions expressed by supervisors about their employees as part of an evaluation process, and which are communicated only to other persons within the employing unit to whom such evaluations would logically be directed, are not actionable at law. *See e.g.*, *Hellesen v. Knaus Truck Lines*, 370 S.W.2d 341 (Mo. 1963); *Burney v. Southern Ry. Co.*, 276 Ala. 637, 165 So. 2d 726 (Ala. 1964); *Cangelosi v. Schwegmann Bros.*, 390 So. 2d 196 (La. 1980). This rule is especially appropriate in the academic setting where, as already discussed, faculty members and administrators must be free to form and express their honest, and often conflicting, opinions on questions such as tenure. Those faculty members and administrators should not have to worry about defending themselves in court every time such an admittedly subjective opinion is given.

The one statement allegedly made by Sullivan which may not express an opinion is that "[t]he attached materials constitute the full record of documents considered by the Dean, the [Faculty Status Committee] and the Faculty in evaluating [plaintiff's] request for tenure." This statement, however, also fails to give rise to a cause of action for defamation. First, such statement is made as part of the evaluation process and was communicated only to other persons who were also part of that process. As just noted, such statements do not give rise to a cause of action for defamation. More importantly, the statement was not about the plaintiff. It was about plaintiff's tenure package. Only an impermissibly strained interpretation of that statement, as well as an impermissibly strained interpretation of the law of defamation, could lead anyone to believe that plaintiff was "defamed" by such statement, even if it was false. Accordingly, Count III of the motion for judgment will be dismissed.