Present: Carrico, C.J., Lacy, Hassell, Keenan, Koontz, and
Kinser, JJ., and Poff, Senior Justice

L. KEITH LARIMORE

v.  Record No. 991567     OPINION BY JUSTICE ELIZABETH B. LACY
                                    April 21, 2000
BRUCE K. BLAYLOCK, ET AL.

            FROM THE CIRCUIT COURT OF THE CITY OF RADFORD
                        Duane E. Mink, Judge

     In this appeal, we consider whether defamatory

communications between persons involved in a university's

tenure review process are entitled to the defense of qualified

privilege or absolute immunity under a doctrine of

"intracorporate immunity."

     L. Keith Larimore, a Professor of Marketing in the

College of Business and Economics at Radford University, filed

a motion for judgment alleging that during the course of his

tenure review proceeding the defendants falsely accused him of

unethical publishing practices.  The defendants were two

members of his Department Review Committee, Hsin-Min Tong and

Melvin R. Mattson, the former Chairman of the Department,

Howard W. Combs, and the Dean of the College of Business and

Economics, Bruce K. Blaylock.  The defendants filed a motion

for summary judgment asserting, inter alia, that they were

absolutely immune from liability under doctrines of sovereign

immunity and "intracorporate privilege."

The trial court concluded that summary judgment was appropriate and entered judgment in favor of the defendants concluding that they were "protected by the doctrine of intracorporate immunity" in that the complained of communications "occurred between persons within the corporation of Radford University having a legitimate corporate interest in the subject matter of the communications, and there is, therefore, no publication sufficient to support the charge of defamation."[1]  Larimore filed an appeal asserting that the trial court erred in holding that the defendants were "clothed in absolute privilege" by the "intracorporate immunity doctrine."  Because the communications at issue are properly treated as matters of qualified privilege, not absolute privilege, we will reverse the judgment of the trial court and remand the case for further proceedings.

The tenure review process, as set out in Radford University's Faculty Handbook, begins with an evaluation by a three-member personnel review committee comprised of faculty members from the applicant's department.  The Vice President for Academic Affairs receives the Committee's recommendation along with recommendations from the Chair of the applicant's

---

[1] The trial court did not rule on defendants' plea of sovereign immunity and that matter is not before us.

department and the Dean of the College.  Copies of these recommendations are also sent to the tenure applicant.  The Vice President submits his or her recommendation to the University President who, in turn, submits a recommendation to the Board of Visitors for a final decision.  If the recommendation of the Vice President or President is negative, the tenure applicant is informed and may appeal any negative recommendation to the Faculty Grievance Committee.  The applicant may also seek an appeal before the Board of Visitors regarding tenure matters.

Larimore received negative tenure recommendations from the faculty review committee, the Chair of his Department, the Dean of the College, and the Vice-President.  However, the President recommended that he receive tenure, as did the Personnel Committee of the Board of Visitors.  Prior to a vote by the Board, the defendants wrote letters to members of the Board urging that Larimore's tenure application be denied. All of these communications except the recommendation of the Vice-President and President contained the allegedly defamatory statements.  The Board voted to deny Larimore tenure.  Larimore, pursuant to the University's appeal procedures, requested reconsideration of the Board's decision. The Board granted the reconsideration and authorized an investigation of the matter.  Following this investigation and

3

the President's positive tenure recommendation, the Board voted to grant Larimore's tenure application.

Larimore divides the defamatory communications which form the basis of this appeal into two categories.[2] The first is the transmission of such communications by the defendants in accordance with the tenure process outlined above. The second category involves communications made by the defendants directly to members of the Board of Visitors.[3] Larimore asserts here, as he did in the trial court, that the defendants are entitled to raise the defense of qualified privilege for those communications in the first category, but that the defense is not available for the second category because those communications were not authorized by the Faculty Handbook and, therefore, the defendants were under no duty to make them.

Communications between persons on a subject in which the persons have an interest or duty are occasions of privilege. However, the privilege attaching to such occasions is a qualified privilege which may be defeated if the plaintiff

_____

[2] Larimore's motion for judgment also included counts relating to other allegedly defamatory communications which the trial court held were barred by the statute of limitations. Larimore did not assign error to that holding.
[3] Larimore also complained of defamatory communications made in conjunction with a disciplinary process which was contemporaneously proceeding against him. However, for

4

proves that the defamatory statement was made maliciously. Chalkley v. Atlantic Coast Line R.R. Co., 150 Va. 301, 306, 143 S.E. 631, 632 (1928). We have applied the doctrine of qualified privilege in a number of cases involving defamatory statements made between co-employees and employers in the course of employee disciplinary or discharge matters. See Southeastern Tidewater Opportunity Project, Inc. v. Bade, 246 Va. 273, 435 S.E.2d 131 (1993); Oberbroeckling v. Lyle, 234 Va. 373, 362 S.E.2d 682 (1987); Great Coastal Express, Inc. v. Ellington, 230 Va. 142, 334 S.E.2d 846 (1985); Montgomery Ward & Co. v. Nance, 165 Va. 363, 182 S.E. 264 (1935); Thalhimer Bros. v. Shaw, 156 Va. 863, 159 S.E. 87 (1931); Chesapeake Ferry Co. v. Hudgins, 155 Va. 874, 156 S.E. 429 (1931); and Chalkley, supra.

The protection of a qualified privilege is afforded because:

> [p]ublic policy and the interest of society demand that in cases such as this an employer, or his proper representatives, be permitted to discuss freely with an employee, or his chosen representatives, charges affecting his employment which have been made against the employee to the employer. There is a privilege on such occasions and a communication made under such circumstances, within the scope of the privilege, without malice in fact, is not actionable, even though the imputation be false, or founded upon erroneous information. The question is not as to the truth or falsity of

purposes of the issue involved in this appeal, we need not detail the disciplinary proceedings.

5

the communication, or whether the action taken by the defendant with reference thereto or based thereon was right or wrong, but whether the defendant in making the publication acted in good faith or was inspired by malice.

Chesapeake Ferry, 155 Va. at 906-07, 156 S.E. at 441. Neither the soundness of this policy nor the application of qualified privilege in these circumstances has been questioned or altered over the passage of time.

The defendants contend, however, that neither the doctrine of qualified privilege nor its underlying policy should be applied to this case. Here, the defendants assert, they were entitled to the absolute protection of the "intracorporate immunity doctrine." That doctrine, as described by the defendants, is that statements "published only to persons within a corporate entity having a duty and interest in the subject matter of the communication, have not been 'published' for defamation purposes." According to the defendants, this doctrine was recognized in Montgomery Ward, Thalhimer, and Chalkley. Such a higher level of protection is appropriate here, the defendants assert, because of the nature of their duties in the tenure review process. We reject these arguments.

In the three cases relied on by the defendants, the defamatory statements were made in connection with the discharge of the plaintiffs from employment and were

6

recognized as privileged occasions to which the qualified privilege defense applied. While in each case the defamatory statements were communicated to persons within the corporate entity, at least one of the employees who heard or read the statement was not an employee who ordinarily would have a duty or interest in the termination decision. The issue in this regard was whether the privileged occasion was lost because communication of the statement to such an employee constituted communication or publication to a third party. If so, liability for defamatory statements would attach regardless of malicious intent.

In the Chalkley case, all parties to the alleged defamatory statement, including Chalkley, were employees of the telegraph company. The complained of statement was a termination communication telegraphed by Chalkley's superintendent to the telegraph company dispatcher for delivery to Chalkley through telegraph operators. The Court held that this was an occasion of privilege, id. at 305-06, 143 S.E. at 632, and that there was no showing of malice or abuse of the privilege, id. at 325, 143 S.E. at 637-38.

Even though the Court found an absence of malice, it went on to consider whether the communication was made under circumstances which would qualify as publication to third parties for defamation purposes. If such publication

7

occurred, the privileged occasion would be defeated and Chalkley would not be required to show malice in order to impose liability on the defendant.  After reviewing cases from other jurisdictions, the Court in Chalkley concluded that the communication in that case "was privileged and the typist had a duty to discharge in the ordinary course of business in connection with the transcription of the communication."  Id. at 334, 143 S.E. at 640.  The Court then stated that "this is not a publication which will support such an action . . . . The communication is therefore held to be a communication from the company directly to the employee, and there is no evidence showing any publication of the alleged libelous matter by the employer, or its agents, and hence there is no basis for the action."  Id. at 334-35, 143 S.E. at 640-41.  The Court concluded there was no publication of the statements to a third party which would defeat the privileged occasion and thus, because the Court had already concluded there was no evidence of malice, Chalkley could not prevail.

The Thalhimer and Montgomery Ward decisions addressed similar circumstances and, citing Chalkley, applied the principle that the privilege prevailed in circumstances where the defamatory statements were dictated to a secretary who had no duty or interest with regard to the subject of the employee discharge but who had a duty to transcribe the statements.

Montgomery Ward, 165 Va. at 380-81, 182 S.E. at 271;

Thalhimer, 156 Va. at 870-71, 159 S.E. at 90.

The thrust of these cases is that employment matters are occasions of privilege in which the absence of malice is presumed. This privilege is lost if defamatory statements are communicated to third parties who have no duty or interest in the subject matter, even if those third parties are fellow employees. However, communication of the statements to an employee required to transcribe or transmit the communication containing the defamatory statements is not a publication to a third party which would cause the loss of the privilege. We find nothing in these cases to suggest, as the defendants contend, that all transmissions of defamatory statements between members of the corporate entity are entitled to absolute immunity. Furthermore, no case subsequently decided by this Court has resolved defamation claims involving employees of a corporate entity by utilizing the concept of absolute immunity suggested by the defendants.

Finally, the defendants assert that, as a policy matter, they should be given enhanced protection because they were "required" to issue "adverse or potentially adverse" reports. We disagree. The defendants' role in the tenure review process is to provide a "recommendation" regarding tenure based on criteria stated in the Faculty Handbook. While such

9

recommendations may from time to time be adverse, there is no requirement that the recommendation be adverse or potentially adverse. In this regard, the defendants' duties in the tenure review process are no different than the duties of employees generally to inform management of adverse or improper actions by fellow employees and the duty of management to investigate and make decisions regarding matters of continued employment. The fact that the defendants here are connected with a university and involved in a tenure decision provides no basis for crafting a different and much broader protection than that available in other workplace settings.

The rule of qualified privilege that we adopted years ago continues to encourage open communications on matters of employment while not shielding the use of such communications for an individual's personal malicious purposes. Therefore, we agree with Larimore and conclude that the trial court erred in holding that the doctrine of qualified privilege did not apply and that the communications at issue were absolutely immune from Larimore's defamation claims.

We disagree, however, with Larimore's position that because, under the Faculty Handbook, the defendants had no duty to communicate directly with the Board of Visitors, the qualified privilege defense is not available for those communications. The Faculty Handbook sets forth a method of

10

complying with the duties owed by employees involved in tenure review matters, but such procedural rules are not the standards by which we determine the applicability of the qualified privilege defense in a common law defamation action. That determination is based on a party's interest and duty with regard to the subject matter. The members of the Board of Visitors are persons with a duty and interest in Larimore's tenure application and communications made to them in connection with the tenure application are entitled to the defense of qualified privilege.

In summary, we hold that Larimore's tenure application process was a privileged occasion and any defamatory statements communicated by the defendants to the Board of Visitors and members of the University administration were entitled to a qualified privilege which shields the defendants from liability unless a showing of malice is made by clear and convincing evidence. Great Coastal Express, 230 Va. at 154, 334 S.E.2d at 854. Therefore, we will reverse the judgment of the trial court and remand the matter for further proceedings consistent with the views expressed in this opinion.

Reversed and remanded.