238

# CIRCUIT COURT OF FAIRFAX COUNTY

Jeannie Kuley

v.

Saly J. Fayez et al.

October 23, 2014

Case No. CL-2014-1087

By Judge Charles J. Maxfield

This matter came before the Court on October 3, 2014, on Defendant's Demurrer. The Court initially entered an order sustaining the Demurrer with leave to amend. However, upon further consideration, the Court has changed its position. While Defendants have established a qualified privilege over the statements at issue, under *Larimore v. Blaylock*, 259 Va. 568, 528 S.E.2d 119 (2000), the privilege can be defeated with a showing of common-law malice. The Court believes Plaintiff has pleaded such a showing. As a result, the Court's Order of October 3 is hereby vacated. Because the Court finds that some of the statements are not actionable for the reasons set forth herein, the Demurrer is hereby sustained in part and overruled in part.

## I. *Factual Background*

Plaintiff, an employee of the Fairfax County Police Department, filed this defamation suit on January 27, 2014. At the time the alleged statements were made, Defendant Fayez was Plaintiff's supervisor in the Department, and Defendant Barrett was the Commander of the Criminal Investigations Bureau. The statements arose out of a disciplinary matter against Plaintiff in January 2013 that involved both defendants. The discipline resulted from Plaintiff's work day on December 18, 2012, during which Defendants alleged that Plaintiff worked unapproved overtime in violation of the County's overtime policies.

Pursuant to the Department's procedures for handling disciplinary matters, Fayez wrote an "Oral Reprimand Form" setting forth specific allegations against Plaintiff. After Plaintiff appealed the Oral Reprimand, Fayez composed a "Step One Grievance Response" that formalized Fayez's claims. After Plaintiff was denied her first appeal, she proceeded to the second level, the "Step Two Grievance," which involved a write-up from Barrett. It is from these three documents, as well as meetings between the parties regarding these disciplinary matters, that Plaintiff claims Defendants made defamatory statements against her.

The Court has identified nineteen statements alleged by Plaintiff to be defamatory in her amended complaint. For reasons not germane to this Demurrer, Plaintiff moved for leave to amend the complaint before Defendant was served. This Court granted that motion on March 7, 2014. These statements related both to the overtime issue at the heart of the disciplinary matter, as well as other alleged conduct that Defendants cited to throughout the process. The nineteen statements are identified and analyzed in depth *infra* Part IV.

Throughout the amended complaint, Plaintiff alleged that these communications were made between herself, Defendants Fayez and Barrett, and other employees of the Department who appeared to be directly involved in the disciplinary process. *See, e.g.*, Am. Compl. at ¶ 53. At no point does Plaintiff allege that the statements were communicated to anyone other than those with a duty to handle such disciplinary matters.

Because Plaintiff has effectively conceded in her response to this Demurrer that the Defendants are entitled to a qualified privilege regarding the statements at issue, the Court will deem as admitted the fact that the statements were only communicated to people with a duty to handle such information. *See* Plaintiff's Response to Demurrer at 10; *see also* Part III of this Opinion.

Plaintiff further pleads that Fayez's motive was one of retaliation. Fayez was displeased with the approved leave of absence Plaintiff took under the Family Medical Leave Act. *Id.* at ¶ 19. Furthermore, Plaintiff noted that she filed an internal hostile work environment complaint against Fayez. *Id.* at ¶ 22. Plaintiff cited conversations had with Fayez in which Fayez was unsympathetic to the work load Plaintiff had, allegedly blaming the increased work on "time management issues." *Id.* at ¶¶ 24-33. As a result of these facts, Plaintiff pleads that "[t]he conduct of Ms. Fayez was malicious." *Id.* at ¶ 114. Further, Plaintiff pleads that Barrett's statements were also malicious because his actions "were done out of ill will and personal spite, and in furtherance of protecting Ms. Fayez from Ms. Kuley's meritorious grievance." *Id.* at ¶ 107.

Defendants then filed this Demurrer.

## II. *Standard of Review*

"A demurrer tests the legal sufficiency of a pleading and can be sustained if the pleading, considered in the light most favorable to the plaintiff, fails to state a valid cause of action," *Kitchen v. City of Newport News*, 275 Va. 378, 385-86, 657 S.E.2d 132 (2008) (citations omitted). In considering a demurrer, the Court must accept as true all facts properly pleaded in the complaint, as well as all "fair inferences" that may be drawn from those facts. *See Fun v. Virginia Military Inst.*, 245 Va. 249, 250, 427 S.E.2d 181 (1993).

Defamation in Virginia requires "(1) publication of (2) an actionable statement with (3) the requisite intent." *Tharpe v. Saunders*, 285 Va. 476, 480, 737 S.E.2d 890 (2013) (citations omitted). The statements at issue must be demonstrably false in order to be considered actionable. *Id.* at 481. Furthermore, the statements must be factual in nature to be actionable; by contrast, expressions of opinion are expressly protected by the First Amendment. *Chaves v. Johnson*, 230 Va. 112, 119, 335 S.E.2d 97 (1985).

While allegedly defamatory statements must be interpreted according to their "plain and natural meaning," defamation can occur "by inference, implication, or insinuation." *Carwile v. Richmond Newspapers*, 196 Va. 1, 7, 82 S.E.2d 588 (1954). "In determining whether the words and statements complained of in the instant case are reasonably capable of the meaning ascribed to them by innuendo, every fair inference that may be drawn from the pleadings must be resolved in the plaintiff's favor. However, the meaning of the alleged defamatory language cannot, by innuendo, be extended beyond its ordinary and common acceptation." *Id.* at 8.

## III. *Qualified Privilege and Publication*

At the heart of the dispute between the parties at oral argument on this Demurrer was the issue of qualified privilege and whether the statements Plaintiff claims were defamatory were "published" for the purposes of sustaining a case of defamation. It is this subject that the Court turns to first.

Defendants argue that they are entitled to immunity because the statements were only made in an employment setting and were only communicated to people with a duty to handle such information. They further assert that, under persuasive case law from the U.S. District Court for the Western District of Virginia, such statements are not "published" for the purpose of defamation actions. Plaintiff asserts that Defendants' reading of the case law is incorrect, and that the facts at issue only support a finding that Defendants are entitled to a qualified privilege that Plaintiff defeated by pleading facts sufficient to support a finding of malice.

There appears to be confusion in the case law as to the implications of a statement that is communicated only within a business, and even then only to people with a duty to handle such information. All of the authorities seem to state that such communications are in some way protected from a claim of defamation. *See infra* Part III.A. However, some cases go further than

that to state that such statements are not published and thus cannot form the basis of a defamation claim. *See, e.g., Dickenson v. Wal-Mart Stores, Inc.,* 1997 U.S. Dist. LEXIS 19459, *9 (W.D. Va. Nov. 3, 1997) (unpublished). Courts commonly refer to this as the "intracorporate immunity doctrine." *Id.* This is not the law of Virginia, however; or, at the very least, after the Supreme Court of Virginia's decision in *Larimore v. Blaylock,* 259 Va. 568, 528 S.E.2d 119 (2000), this is no longer the law of the Commonwealth.

## A. *Origins of the Doctrine under Virginia Law*

The genesis of the qualified privilege doctrine in Virginia came largely from a series of cases that included *Montgomery Ward & Co. v. Nance,* 165 Va. 363, 182 S.E. 264 (1935); *Thalhimer Bros. v. Shaw,* 156 Va. 863, 159 S.E. 87 (1931); and *Chalkley v. Atlantic Coast Line RR.,* 150 Va. 301, 143 S.E. 631 (1928). In particular, the Supreme Court of Virginia in *Thalhimer* identified the origins of the principle and its sometimes-dichotomous nature:

> The modern authorities hold that a communication containing defamatory matter made to a business associate or servant in the ordinary and natural course of business is not actionable. . . . Some of the cases hold that the occasion being qualifiedly privileged, whether or not the communication comes within the privilege, depends upon the existence or non-existence of malice. Other cases hold that such communication to a party charged with a duty or interest therein is not publication.

*Thalhimer,* 156 Va. at 868. These cases established the privilege as a common-law doctrine in the Commonwealth. However, the Court did not explicitly specify which of the two jurisprudential paths was being followed. This lack of clarity has led to two parallel schools of thought among courts interpreting Virginia law.

## B. *Dickenson and the Intracorporate Immunity Doctrine*

Some courts read *Thalhimer* and believe that Virginia has gone with the latter approach, finding all intracorporate communications in the ordinary course of business to fail the publication prong and create immunity for defendants. This was the approach taken by the U.S. District Court for the Western District of Virginia in *Dickenson v. Wal-Mart.* In its unpublished opinion, the court stated that "[w]hen communication is intra-corporate and is heard by only those who have the duty or authority to receive the information, no publication has occurred." *Dickenson,* 1997 U.S. Dist. at *9. The court noted that a number of jurisdictions have created this strong immunity in the defamation arena, and that the doctrine has a sound policy reasoning. *See id.* at *10 ("Addressing personnel problems and enforcing work place rules is part of the due and regular course of a corporation's

business. Therefore, when corporate officials communicate among each other, the law regards their discussions as the legal equivalent of speaking only to one's self.").

The District Court then analyzed *Thalhimer* and determined that Virginia recognizes intracorporate immunity. *Id.* (citing *Thalhimer* and finding that "[t]he Supreme Court of Virginia has long agreed with this approach"). Other courts interpreting Virginia law have similarly held that such communications are entitled to absolute protection. *See, e.g., Cobb v. Rector & Visitors of the Univ. of Va.*, 84 F. Supp. 2d 740, 750 (W.D. Va. 2000); *Childress v. Clement*, 44 Va. Cir. 169, 175 (Richmond 1997); *Corr v. Mazur*, 15 Va. Cir. 184, 196 (Richmond 1988).

Under this theory, the Plaintiff's case comes to an end; without publication, the Plaintiff fails to establish the first element of defamation. *Dickenson*, 1997 U.S. Dist. at *13 ("Since the statements have not been published, no claim for defamation exists."). It is this reading that Defendants rely on in their Demurrer.

## C. *Larimore and the Rejection of the Intracorporate Immunity Doctrine*

Whether the *Dickenson* court's reading of *Thalhimer* is reasonable is not for this Court to decide. The reasoning in *Dickenson* was rejected by the Supreme Court of Virginia in *Larimore*. This Court takes note of the fact that *Dickenson* is not mentioned at all in the *Larimore* opinion.

*Larimore* involved the tenure review of a professor at Radford University in which members of the tenure review committee were alleged to have falsely accused the plaintiff of "unethical publishing practices." *Larimore*, 259 Va. at 570. Defendants in that case asserted that they were protected by the intracorporate immunity doctrine because the statements had stayed between members of the University community with a duty to handle the tenure process. See Brief for Appellees at 26-29, *Larimore v. Blaylock*, 259 Va. 568, 528 S.E.2d 119 (2000) (No. 991567). Because of the intracorporate nature of the communications, defendants argued, the statements were entitled to absolute immunity. *See id.* at 17-18.

The court, in no uncertain terms, rejected the concept of the intracorporate immunity doctrine. *Larimore*, 259 Va. at 573 ("Here, the defendants assert, they were entitled to the absolute protection of the intracorporate immunity doctrine. . . . We reject these arguments."). The Court sided with Radford in finding that the statements were only divulged to those with a duty to handle such matters. *Id.* at 575-76. However, the court analyzed *Chalkley, Thalhimer*, and *Montgomery Ward* and came to the conclusion that they established a qualified privilege in circumstances where the statements are kept internal to those with a duty to know, not an absolute rule barring suit as a result of non-publication. *Id.* at 574-75. Consequently, the court found, even though the statements were not published outside of the University's core administration, plaintiffs could still move forward and defeat the

qualified privilege with a showing of malice. *See id.* at 576 ("In summary, we hold that [plaintiff's] tenure application process was a privileged occasion and any defamatory statements communicated by the defendants . . . were entitled to a qualified privilege which shields the defendants from liability *unless a showing of malice is made by clear and convincing evidence.*") (emphasis added).

D. *A Qualified Privilege Was Established That Can Be Overcome with Malice*

The court in *Thalhimer* stated that there are two jurisprudential paths courts can take with respect to intracorporate communications: they can either hold that such communications are subject to a qualified privilege or hold that such statements are not published and thus not actionable. The *Larimore* court emphatically chose the former for Virginia. Defendants state in their Demurrer that they are entitled to both qualified privilege and immunity. *See* Defendants' Demurrer at 8-9. It is unclear whether they are asking to invoke both theories or whether they are conflating the two. However, the two doctrines are mutually exclusive, and after *Larimore*, it is qualified privilege that prevails. The Defendants' Brief in *Larimore* provides support for this proposition. Specifically, they argued that the two doctrines were mutually exclusive, that qualified privilege was inapplicable in that case, and that the intracorporate immunity governed instead. *See* Brief for Appellees at 21-23, *Larimore v. Blaylock*, 259 Va. 568, 528 S.E.2d 119 (2000) (No. 991567).

It is the opinion of this Court that *Larimore* expressly rejects the reasoning in *Dickenson* and similar cases; thus, the Western District of Virginia's opinion is not persuasive. Defendants are not the only ones to argue for the continued survival of intracorporate immunity after *Larimore*; parties continue to point to the prior case law cited *supra* Part III.B. in support of its continued vitality. *See, e.g., Jafari v. Old Dominion Transit Mgmt. Co.*, 2008 U.S. Dist. LEXIS 97037, *33-*34 (E.D. Va.) (unpublished). However, as the Eastern District found in that case, *see id.*, and as this Court finds today, it is time to officially retire *Dickenson* and its progeny in Virginia. The clear implication of *Larimore* is that the publication issue is wrapped into the qualified privilege inquiry; that is, if allegedly defamatory statements are communicated only to people within an organization with a duty to handle such information, publication is established, but established in such a way to trigger a qualified privilege. Accordingly, a plaintiff under such facts must face the privilege, but they have sufficiently pleaded publication, and can move forward with their case by a showing of malice to defeat the privilege.

Defendants in this case have submitted pleadings and a transcript from the case of *Todd Kaufman v. John Nelson et al.*, Civil Action No. 74562, heard by the Honorable R. Terrence Ney sitting in the Circuit Court of

Loudoun County. Defendants point to Judge Ney's ruling in support of their argument that intracorporate communications are absolutely privileged. However, after a thorough consideration of that case, this Court believes that Judge Ney's opinion in that case is consistent with its opinion today, in that Judge Ney presumed an absence of malice in the privileged statements, and was not convinced that plaintiff overcame the privilege with any facts demonstrating malice.

In this case, no showing was made in the pleadings that the statements were communicated to anyone except those with a duty to handle such employment issues. Thus, the qualified privilege is triggered. Accordingly, this Court must assess whether Plaintiff adequately pleaded malice under the law of Virginia.

## E. *Defendants Have Sufficiently Pleaded Malice*

The Supreme Court of Virginia has held that plaintiffs who seek to establish malice in a defamation case can do so by proving common-law malice by clear and convincing evidence. *See Great Coastal Express v. Ellington*, 230 Va. 142, 154, 334 S.E.2d 846 (1985). Common-law malice in Virginia is defined as "behavior actuated by motives of personal spite, or ill-will, independent of the occasion on which the communication was made." *Gazette, Inc. v. Harris*, 229 Va. 1, 18, 325 S.E.2d 713 (1985).

Accepting Plaintiff's factual allegations as true, this Court finds that she has sufficiently established common-law malice. Plaintiff pleads a series of contentious events between herself and Plaintiff, Am. Compl. at ¶¶ 19-30, and concludes that "Ms. Fayez's defamatory actions were done out of ill will and personal spite, in retaliation for Ms. Kuley's previous complaints against Ms. Fayez and the still ongoing internal investigation with respect to the same." *Id.* at ¶ 55. Furthermore, with respect to Barrett, Plaintiff pleads facts regarding his Second Step Grievance, Am. Compl. at ¶¶ 75-80, and concludes that "Barrett's defamatory actions were done out of ill will and personal spite, and in furtherance of protecting Ms. Fayez from Ms. Kuley's meritorious grievance." *Id.* at ¶ 107. Accordingly, the Court is satisfied that common-law malice is sufficiently pleaded to survive demurrer.

## IV. *Defamatory Nature of the Alleged Statements*

As stated above, in order to be actionable as defamation, statements must injure reputation and be both (1) factual in nature and (2) demonstrably false. *Chaves*, 230 Va. at 119; *Tharpe*, 285 Va. at 481-83. In order to fully address the Demurrer despite the limitations of the briefs, the Court will at this stage eliminate those statements that clearly are not actionable. Remaining statements will be addressed by the trial judge.

In Count I, "Defamation and Defamation *per Se*" against Defendant Fayez, Plaintiff relies upon the statements in paragraphs 45-68. In Count II,

"Defamation and Defamation *per Se*" against Defendant Barrett, Plaintiff relies upon the statements in paragraphs 71-108.

## A. *Statements 1-5 (Defendant Fayez)*

The first five statements can be grouped together, as they all involve factual statements from Fayez that Plaintiff worked unapproved overtime in violation of Fairfax County and Departmental regulations. These are the statements found in Paragraphs 45, 48, 49, 60, and 63 of the complaint. *See, e.g.*, Am. Compl. at ¶ 45 ("[Plaintiff] advised both Lt. Thompson and [Fayez] that she had worked unapproved overtime on 12/18/12."); *id.* at ¶ 48 ("By working overtime without getting prior approval, [Plaintiff] violated the County of Fairfax Personnel Regulations 4.15. . . ."). These statements are demonstrably true. Plaintiff admitted in her Amended Complaint that she worked unapproved overtime on December 18, 2012. *See id.* at ¶ 36. Plaintiff claims that this statement is false because Fayez knew Plaintiff (and others) had worked extra time frequently and never raised an issue about it. *Id.* at ¶ 46. However, that does not change the truth that Plaintiff's overtime was unapproved and in violation of County and Departmental policy. Fayez's knowledge and past acquiescence of extra time is irrelevant to the falsity inquiry. These statements are not actionable.

## B. *Statement 6 (Defendant Fayez)*

"[Plaintiff] has been given a direct order to follow county and section policy when working overtime." *Id.* at ¶ 51. This is a factual statement that Plaintiff alleges was not true; she asserts that she was never given such an order. *Id.* Defendants identify in their Demurrer Fairfax County's "published overtime policy" as well as staff meetings held within the Department to show that the order was given. Defendants Demurrer at 4. These are factual allegations outside of the pleadings that cannot be considered on demurrer. "Since a demurrer searches the record, the defendant may not assert new matter in his or her demurrer; a demurrer that alleges new facts is a 'speaking demurrer' and will be stricken from the record." 1-6 *Bryson on Virginia Civil Procedure*, § 6.03. Defendants can raise this evidence at some later time. For now, however, this Court must take Plaintiffs allegations as true. This statement is actionable.

## C. *Statement 7 (Defendant Fayez)*

When Plaintiff tried to remind Fayez of the multiple discussions in the past regarding Plaintiff working late, Fayez allegedly responded: "That is not true. We have never had that discussion." Am. Compl. at ¶ 52. This is a factual statement by Fayez that Plaintiff is not telling the truth. Because this statement was made at a formal reprimand meeting, Fayez's claim was a particularly damning accusation. The Court must accept as true Plaintiff's claim as to this statement's falsity. This statement is actionable.

### D. *Statement 8 (Defendant Barrett)*

Barrett allegedly stated that Plaintiff is "highly toxic" toward her supervisors. *Id.* at ¶ 71. Whether or not Plaintiff is toxic is a pure statement of opinion. This statement is not actionable.

### E. *Statement 9 (Defendant Barrett)*

"One area in your [2008-2009] performance evaluation indicated that 'you tend to over-extend and must learn to balance her time and involvement with the demands of the job.'. . . This . . . appears to relate to your current oral reprimand of working overtime without getting prior approval." *Id.* at ¶ 76. The first part of this statement is factually true, in that Plaintiff's previous evaluation did include those statements. The second part is Barrett's opinion, as evidenced by his language that the evaluation "appears to" relate to the current reprimand. Both parts of this statement are not actionable.

### F. *Statement 10 (Defendant Barrett)*

Plaintiff alleges that Barrett cited a 2004 grievance by Plaintiff as evidence of a " 'pattern' of unprofessional and disrespectful behavior." *Id.* at ¶¶ 82-83, 92. The first part of the statement is the citation to the 2004 grievance. The existence of this grievance is a fact that Plaintiff admits as true. The second part is Barrett's opinion that Plaintiff is unprofessional and disrespectful. This statement is distinguishable from Statements 16, 17, and 18, because this statement only involves one grievance that Plaintiff does not challenge the existence of in her Complaint. Both parts of this statement are not actionable.

### G. *Statement 11 (Defendant Barrett)*

Plaintiff previously "created hostility and discontent among her co-workers by spreading false rumors and innuendos" about them. *Id.* at ¶ 84. The first part of this statement is that Plaintiff "created hostility and discontent," which is a pure opinion. Part I of this statement is not actionable. However, with regards to the second part, Plaintiff alleges that she did not spread false rumors and that Barrett's statement is factual and false. Taking the allegations as true, Part II of this statement is actionable.

### H. *Statement 12 (Defendant Barrett)*

Plaintiff "eavesdropped on a private conversation" during a 2004 investigation. *Id.* at ¶ 86. This is a factual statement that Plaintiff alleges is not true. This statement is actionable.

## I. *Statement 13 (Defendant Barrett)*

Plaintiff initiated a "false allegation of a hostile work environment" against a superior. *Id.* at ¶ 88. The statement is seemingly capable of being factual in nature, given that an investigation found no evidence of a hostile work environment as claimed by Plaintiff. *See id.* However, the fact that the investigation found no evidence does not mean that, as a matter of provable fact, Plaintiff's allegations were demonstrably false. Thus, Barrett's comment that Plaintiff's grievance was "false" becomes a pure statement of opinion. This statement is not actionable.

## J. *Statement 14 (Defendant Barrett)*

Plaintiff's actions "were toxic and divisive," "showed a total disrespect for [her] supervisors and did everything [she] could to undermine their supervision." *Id.* at ¶ 90. Whether Plaintiff was toxic, disrespectful, and whether she did "everything" she could to undermine her superiors are opinion statements. These statements are not actionable.

## K. *Statement 15 (Defendant Barrett)*

In regards to Plaintiff's previous grievance: "This was yet another example of undermining your supervisor and creating an atmosphere of divisiveness. . . ." *Id.* at ¶ 95. Plaintiff's insubordination and divisiveness are matters of opinion. This statement is not actionable.

## L. *Statements 16-18 (Defendant Barrett)*

These three statements can be grouped together, because they all involve statements by Barrett that Plaintiff has engaged in a "pattern" of "unfounded complaints" in the past. These are the statements alleged in Paragraphs 99, 100, and 101 of the Complaint. *See, e.g., id.* at ¶ 99 (stating that Plaintiff has a "pattern of complaining about your supervisors and making disparaging or derogatory comments about them"). Plaintiff alleges that one of the grievances cited by Barrett did not actually take place, namely, a 2005 complaint against one of her co-workers. *See id.* at ¶ 103 (stating that the 2005 grievance "did not occur"). Inasmuch as Barrett stated that Plaintiff engaged in a "pattern" of complaints during her employment, Plaintiff is directly alleging the falsity of this statement. These statements are actionable. However, to the extent that Barrett characterized Plaintiff's history as "reflect[ing] a pattern of inappropriate behavior," *see* Am. Compl. at ¶ 99, this part of the statement is pure opinion and thus not actionable.

## M. *Statement 19 (Defendant Barrett)*

"You have seriously violated the trust of your current and past supervisors and that makes for a very difficult and divisive working environment. . . ." Am. Compl. at ¶ 102. These are opinion statements regarding Plaintiff's conduct. These statements are not actionable.

## V. *Conclusion*

In sum, the Court finds the following statements to be sufficiently pleaded: (1) Fayez's statement that Plaintiff was given a direct order to follow county and department overtime policy; (2) Fayez's oral assertion that it was not true that she and Plaintiff had discussions on multiple occasions regarding Plaintiff working late; (3) Barrett's assertion that Plaintiff had been spreading false rumors and innuendos about previous supervisors; (4) Barrett's assertion that Plaintiff "eavesdropped on a private conversation" between her coworkers; and (5) any and all statements that Plaintiff engaged in a "pattern" of filing grievances against her superiors (except Statement 10).

With respect to these statements, Plaintiff has pleaded a cause of action for defamation *per se*, and the Demurrer is overruled. Defendants also challenge the complaint as failing to plead defamation *per se*. The distinction between proving defamation and defamation *per se* is the requirement of malice unless substantial damage to reputation is apparent. *See Dun & Bradstreet v. Greenmoss Builders*, 472 U.S. 749, 105 S. Ct. 2939, 86 L. Ed. 2d 593 (1985). As malice is at issue in this case due to the qualified privilege, the issue appears to be academic. However, the Court is persuaded that the actionable statements do address the professional reputation of Plaintiff and harm her in her profession or trade. *See Fleming v. Moore*, 221 Va. 884, 275 S.E.2d 632 (1981). Accordingly, this challenge to the Amended Complaint is overruled. As explained *supra* Part IV, however, to the extent that Plaintiff alleged any statements other than these specifically noted as sufficient, such statements are inadequate to establish defamation, and the Demurrer as to those statements is sustained.